EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Redmane Technology, LLC<br><br>Peticionario<br><br>v.<br><br>Departamento de Salud y D2SOL, Inc., et als.<br><br>Recurridos | Certiorari<br><br>2026 TSPR 37<br><br>218 DPR ___ |

Número del Caso: AC-2025-0025

Fecha: 10 de abril de 2026

Tribunal de Apelaciones

    Panel Especial

Representante legal de la parte peticionaria:

    Lcdo. José A.B. Nolla-Mayoral

Representantes legales de la parte recurrida:

    Lcda. María C. Cartagena Cancel
    Lcdo. Diego R. Meléndez Apellániz

Oficina del Procurador General:

    Hon. Omar Andino Figueroa
    Procurador General

    Lcdo. Edwin B. Mojica Camps
    Subprocurador General

    Lcda. Carmen A. Riera Cintrón
    Procuradora General Auxiliar

Materia: Derecho Administrativo - Normativa procesal aplicable a las notificaciones de adjudicación en procesos de licitación pública.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Redmane Technology, LLC | | |
| Peticionario | | |
| v. | AC-2025-0025 | |
| Departamento de Salud y D2SOL, | | |
| Inc., et als. | | |
| Recurridos | | |

**El Juez Asociado señor Candelario López emitió la Opinión del Tribunal.**

En San Juan Puerto Rico, a 10 de abril de 2026.

En esta ocasión tenemos la oportunidad de aclarar la normativa procesal aplicable a las notificaciones de adjudicación en procesos de licitación pública. En específico, tenemos que resolver si el Tribunal de Apelaciones erró al desestimar por falta de jurisdicción un recurso de revisión judicial donde se impugnó una adjudicación de *request for proposal* (RFP) efectuada por el Departamento de Salud de Puerto Rico (DSPR). Ello surge porque, a juicio del Tribunal de Apelaciones, la notificación de la referida adjudicación fue defectuosa al no incluir las advertencias pertinentes para que las partes solicitaran revisión administrativa y/o judicial. Como resultado, el foro intermedio desestimó el recurso por entender que resultaba prematuro para su adjudicación, y ordenó al DSPR a notificar nuevamente a los licitadores.

Por considerar que el foro apelativo intermedio actuó correctamente al desestimar el recurso de revisión judicial

presentado por la parte peticionaria, adelantamos que procede confirmar la Sentencia recurrida. Además, debido a la confusión que ha generado el referido dictamen entre las partes del pleito, consideramos prudente aclarar la norma aplicable en materia de notificaciones pertinentes a adjudicaciones en procesos de licitación pública. A continuación, exponemos el trasfondo fáctico que originó el asunto ante nuestra consideración.

## I

Los hechos de este recurso tienen su origen en la publicación de una subasta por el DSPR. El 22 de julio de 2024, el DSPR publicó el *Puerto Rico Medicaid Program Eligibility and Enrollment System Takeover Request for Proposal*, con el fin de seleccionar un proveedor cualificado para la administración del sistema de elegibilidad e inscripción del Programa Medicaid Puerto Rico. Así, el DSPR recibió propuestas por parte de RedMane Technology, LLC (RedMane o parte peticionaria), D2Sol, Inc. (D2Sol) y Trillian Technologies, Inc. (Trillian).

Realizada la evaluación correspondiente, el 14 de noviembre de 2024, el DSPR notificó un *Award Notification* mediante el cual adjudicó la *buena pro* a favor de D2Sol. En el referido documento, se les notificó a las partes que tendrían un término de diez días laborables para solicitar reconsideración ante el DSPR y, posteriormente, veinte días

laborables para presentar un recurso de revisión judicial

ante el Tribunal de Apelaciones.[1]

Así las cosas, el 21 de noviembre de 2024, Trillian

solicitó reconsideración ante el DSPR y, el 2 de diciembre

de 2024, RedMane hizo lo propio. Según se desprende del

---

[1] En lo pertinente a las advertencias para solicitar la revisión administrativa y judicial de la adjudicación del RFP, el *Award Notification* emitido por el DSPR notificó a las partes lo siguiente:

ADMINISTRATIVE REVISION/JUDICIAL REVIEW - TERMS
**Any person or party adversely affected or aggrieved by this intention of award may, according to 3 LPRA §9659, file a motion for reconsideration with the secretary of the Puerto Rico Department of Health (PRDoH) within a term of ten business (10) days from the date of the notification of the award.** The PRDoH must consider the motion for reconsideration within ten (10) business days of being filed. If any determination is made in its consideration, the term to request the appeal for judicial review will begin from the date on which a copy of the notification of the decision of the PRDoH is filed on record, according to the case, resolving the motion for consideration. If the filing date of the copy of the notification of the decision is different from that of the deposit in the ordinary mail or the sending by electronic means of said notification, the term will be calculated from the date of the deposit in the ordinary mail or sending by electronic means, as appropriate. If the PRDoH fails to take any action in relation to the motion for reconsideration within ten (10) days of its filing, it shall be understood that the motion was denied outright, and the time to request judicial review shall start to run from said date.

If the PRDoH accepts the reconsideration request within the term provided, it must issue the reconsideration decision or resolution within thirty (30) days following the filing of the motion for reconsideration. If the PRDoH accepts the motion for reconsideration but fails to take any action in relation to the motion within thirty (30) days of its filing, it will lose its jurisdiction and the term to request the judicial review will begin from the expiration of said term of thirty (30) days. The PRDoH may extend said term only once, for an additional period of fifteen (15) days.

**Any person or party adversely affected by a final reconsideration or decision may file a petition for review with the Puerto Rico Court of Appeals within a term of twenty (20) business days of such final decision or determination being filed.** See 3 LPRA § 9672.

The mere presentation of a motion for reconsideration does not have the effect of preventing the PRMP from continuing with the procurement process within this request for Proposal.

(Énfasis suplido).

expediente, el 9 de diciembre de 2024, el DSPR consolidó ambas solicitudes de reconsideración en un proceso de revisión administrativa único, pero nunca emitió determinación alguna al respecto.[2]

Inconforme, el 26 de diciembre de 2024, RedMane presentó un recurso de *revisión judicial* ante el Tribunal de Apelaciones. Mediante su escrito, impugnó la determinación del DSPR de adjudicar la buena pro a favor de D2Sol.

En atención a ello, el 23 de enero de 2025, el DSPR solicitó la desestimación del recurso presentado por RedMane por falta de jurisdicción. En específico, el DSPR arguyó que el recurso instado por RedMane era prematuro, debido a que el *Award Notification* impugnado incluyó una notificación defectuosa en cuanto a los términos establecidos para solicitar reconsideración y revisión judicial. A saber, sostuvo que la notificación consignó que los términos para solicitar reconsideración y revisión judicial eran de diez y veinte días laborables, respectivamente, en vez de los días calendario establecidos por la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9601, et seq. Por consiguiente, solicitó la desestimación del recurso.

El 3 de febrero de 2025, el Tribunal de Apelaciones declaró *ha lugar* la moción de desestimación instada por el

---

[2] Según obra en el expediente, el DSPR identificó el proceso de revisión administrativa consolidado como DS-SUB-2024-12-03-009.

DSPR, y desestimó el recurso por prematuro. El foro apelativo intermedio concluyó que resultaba evidente que el DSPR había emitido una notificación defectuosa en cuanto a las advertencias para presentar un recurso de revisión administrativa y judicial, ya que la LPAU dispone claramente que dichos trámites se computan en "días calendario" y no "días laborables". Por consiguiente, devolvió el caso al DSPR para que emitiera una notificación conforme a derecho, y así, los perjudicados pudiesen articular una defensa apropiada. En específico, el foro intermedio emitió las siguientes expresiones:

> […]
>
> Ante la inobservancia de los postulados que gobiernan el asunto ante nuestra consideración, **nos vemos precisados a devolver el caso al DSPR para que emita un dictamen conforme a nuestro ordenamiento jurídico y lo notifique nuevamente a los licitadores.**
>
> […]
>
> Por los fundamentos anteriormente expuestos, se declara ha lugar la moción de desestimación que instó el DSPR. En consecuencia, se desestima por prematuro. el recurso de autos Véase, Regla 83(B)(1) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B R. 83(B)(1). **Se devuelve el caso ante la consideración del DSPR para que emita una correcta notificación de adjudicación del RFP.**

(Énfasis suplido).

Sin advenir final y firme el dictamen del Tribunal de Apelaciones, el 11 de febrero de 2025, el DSPR notificó un segundo *Award Notification*, enmendando las advertencias para

solicitar reconsideración y revisión judicial, conforme las

Secciones 3.15 y 4.2 de la LPAU.[3]

---

[3] La referida notificación fue declarada inoficiosa por el Tribunal de Apelaciones en el caso KLRA202500195. En lo pertinente al contenido de las advertencias, el segundo *Award Notification* emitido por el DSPR notificó a las partes lo siguiente:

RECONSIDERATION/JUDICIAL REVIEW - TERMS
**According to 3 L.P.R.A. § 9655, the party adversely affected by a partial or final resolution or order may, within twenty (20) days from the date of filing in the records of the notification of the resolution or order, file a motion for reconsideration of the resolution or order.** The agency must consider it within fifteen (15) days of the filing of said motion. If it rejects it outright or does not act within fifteen (15) days, the term to request judicial review will begin to count again from the date of notification of said denial or from the expiration of those fifteen (15) days, as the case may be. If a determination is made in its consideration, the term to request judicial review will begin to count from the date on which a copy of the notification of the agency's resolution definitively resolving the motion for reconsideration is filed in the records. Such resolution must be issued and filed in the records within ninety (90) days following the filing of the motion for reconsideration. If the agency grants the motion for reconsideration but fails to take any action in relation to the motion within ninety (90) days of its filing, it will lose jurisdiction over it and the term to request judicial review will begin to count from the expiration of said ninety (90) day term unless the agency, for just cause and within said ninety (90) days, extends the term to resolve for a period that will not exceed thirty (30) additional days.

If the filing date in the records of the copy of the notification of the order or resolution is different from the one submitted through ordinary mail or sent by electronic means of said notification, the term will be calculated from the date of submission through ordinary mail or by electronic means, as appropriate.

The party filing a motion for reconsideration must submit the original motion and two (2) copies either in person or by certified mail with return receipt to the Division of Administrative Hearings within the Legal Advisory Office of the Department of Health. The requesting party must also notify all other involved parties within the designated timeframe and include proof of this notification in the motion.

Submissions must be made as follows:
• For personal delivery: Monday through Friday (excluding holidays), between 8:00 a.m. and 4:30 p.m., at the following address:
Department of Health, Legal Advisory Office - Division of Administrative Hearings 1575 Avenida Ponce de León, Carr. 838, Km. 6.3, Bo. Monacillos, San Juan, Puerto Rico 00926.
• Alternatively, by certified mail with return receipt, to the following postal address:

En desacuerdo, el 18 de febrero de 2025, RedMane presentó una *Moción de reconsideración*, la cual fue rechazada mediante *Resolución* notificada el 7 de abril de 2025.

---

Legal Advisory Office - Division of Administrative Hearings
Department of Health
PO Box 70184 San Juan, Puerto Rico 00936-8184.

**According to 3 L.P.R.A. § 9672, a party adversely affected by an agency's final order or resolution, and who has exhausted all remedies provided by the agency or the appropriate appellate administrative body, may file a request for judicial review with the Court of Appeals within thirty (30) days.** This period begins from either the date the notification of the agency's final order or resolution is filed in the records or the applicable date provided under 3 L.P.R.A. § 9655, when the time limit for requesting judicial review has been interrupted by the timely filing of a motion for reconsideration.

The party requesting judicial review must notify the agency and all other involved parties of the filing simultaneously or immediately after submitting the request to the Court of Appeals. Notification to the agency must be sent to the same addresses designated for the filing of motions for reconsideration. The notification of the filing submitted to the Court of Appeals must include all annexes.

If the filing date of the copy of the notification of the agency's final order or resolution in the records differs from the date it was deposited in the mail, the time period for requesting judicial review will be calculated from the date of deposit in the mail.

The judicial review provided herein shall be the exclusive remedy for reviewing the merits of an administrative decision, whether it is of an adjudicative nature or of an informal nature issued under 3 L.P.R.A. § 9601 et al.

The mere presentation of a motion for reconsideration or request for judicial review does not have the effect of preventing the Puerto Rico Medicaid Program (PRMP) from continuing with the procurement process within this request for proposals, unless otherwise determined by a court of law.

Finally, any party adversely affected by this Award Notification that decides to file a motion for reconsideration according to 3 L.P.R.A. § 9655 and eventually files a request for judicial review according to 3 L.P.R.A. § 9672, must comply with a Notice Requirement meaning that they have the obligation to inform other participating parties to ensure transparency, fairness, and due process.

(Énfasis suplido).

Inconforme, el 25 de abril de 2025, RedMane presentó el recurso de epígrafe y esbozó el siguiente señalamiento de error:

ERRÓ EL TRIBUNAL DE APELACIONES AL DETERMINAR QUE EL DERECHO A SOLICITAR REVISIÓN DE LA ADJUDICACIÓN DE LICITACIÓN PÚBLICA EN ESTA SOLICITUD DE PROPUESTAS SE RIGE POR LA SECCIÓN 3.15 DE LA LEY DE PROCEDIMIENTO ADMINISTRATIVO UNIFORME [LEY 38 2017, SEGÚN ENMENDADA] (LPAU), CON EXCLUSIÓN DE LA SECCIÓN 3.19 DE PROCESOS DE LICITACIÓN PÚBLICA Y LA SECCIÓN 4.2 DE LA LPAU.

Examinado el recurso, el 2 de julio de 2025, notificamos una *Resolución* mediante la cual concedimos al DSPR un término de veinte días para mostrar causa por la cual no se debía expedir el recurso y ordenarle notificar la adjudicación de la subasta, conforme la Sección 3.19 de la LPAU. En atención a ello, el 22 de julio de 2025, el DSPR compareció mediante un *Escrito en Cumplimiento de Orden*, y solicitó que se le devolviera el caso para volver a notificar el *Award Notification*, según lo dispuesto en la referida Sección 3.19.

Así las cosas, estamos en posición de expedir el recurso de epígrafe, acogido como *certiorari*, y procedemos a resolver.

## II

### A. Contratación gubernamental mediante subasta o RFP

Sabido es que, en nuestra jurisdicción, la contratación gubernamental está revestida del más alto interés público, pues persigue promover la inversión adecuada, responsable y eficiente de los recursos del Estado. *St. James Sec. v. AEE*,

213 DPR 366, 377 (2023); *Super Asphalt v. AFI y otro*, 206 DPR 803, 820 (2021). Con miras a lograr este objetivo, el gobierno utiliza los procedimientos de subasta o RFP como mecanismos de adquisición de bienes y servicios, para proteger el erario y garantizar que se realicen sus funciones administrativas responsablemente. *St. James Sec. v. AEE*, *supra*, pág. 377; *Super Asphalt v. AFI y otro*, *supra*, págs. 820-821.

En lo pertinente al RFP, este es un procedimiento informal y flexible mediante el cual el oferente tiene la facultad de negociar con el Estado, mediante revisión y enmiendas a su oferta, previo a la adjudicación del contrato. *St. James Sec. v. AEE*, *supra*, págs. 377-378. Por ser el RFP un proceso al que se recurre cuando se trata de la adquisición de bienes o servicios especializados que involucran asuntos altamente técnicos y complejos, esta Curia ha expresado que el criterio de las agencias amerita deferencia. Íd. pág. 378. Esto así, debido a que las agencias administrativas, de ordinario, se encuentran en mejor posición que los tribunales para evaluar las propuestas o licitaciones ante su consideración, de acuerdo con los parámetros establecidos por ley y los reglamentos aplicables. Íd. Por consiguiente, hemos establecido que los tribunales no debemos intervenir con la adjudicación de una subasta o el rechazo de una propuesta, salvo que la determinación administrativa adolezca de un abuso de discreción, arbitrariedad o irracionabilidad. Íd.

### B. Notificación de adjudicación de subastas o RFP

En más de una ocasión hemos expresado que el derecho a cuestionar la adjudicación de un proceso de licitación pública mediante el proceso de revisión judicial es parte del debido proceso de ley. *St. James Sec. v. AEE*, *supra*, pág. 379; *PVH Motor v. ASG*, 209 DPR 122, 132 (2022). Por consiguiente, para que las partes puedan ejercer su derecho, **es indispensable que las notificaciones que se realicen durante estos procesos sean efectuadas correctamente, e incluyan las advertencias relativas al derecho a procurar la revisión judicial, el término disponible para hacerlo y la fecha del archivo en autos de una copia de la notificación**. Íd.

De esta manera, una notificación defectuosa priva de jurisdicción al foro revisor para efectos de evaluar la determinación realizada por las agencias. *St. James Sec. v. AEE*, *supra*, pág. 380; *PVH Motor v. ASG*, *supra*. Es decir, **una notificación que no incluya las advertencias pertinentes impide que comience a transcurrir el término para recurrir de cualquier determinación administrativa**, y por consiguiente, violenta el derecho al debido proceso de ley de la parte afectada. Íd.

En lo pertinente a la controversia que nos ocupa, hemos reconocido que los oferentes o participantes de un RFP pueden cuestionar la adjudicación de una propuesta de subasta mediante revisión judicial, puesto que un RFP "participa de

características adjudicativas de la misma forma que la subasta tradicional". *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR 525, 532-533 (2019). Es decir, **en ninguna circunstancia un RFP estará exento de revisión judicial aunque la legislación o reglamentación no lo disponga**. Íd. Para efectos del procedimiento de revisión a seguir y realizar una notificación conforme a derecho, en su momento extendimos la aplicación de la Sección 3.19 de la LPAU, *supra*, al procedimiento de RFP.[4] *R & B Power v. ELA*, 170 DPR 606, 624-625 (2007).

Por ser el estatuto rector que busca uniformar los procedimientos administrativos ante las agencias, la LPAU, *supra*, codifica las pautas mínimas que deben garantizar los foros administrativos. *St. James Sec. v. AEE*, *supra*; *ACT v. Prosol et als.*, 210 DPR 897, 907 (2022). En cuanto a los mecanismos de impugnación, la LPAU, *supra*, establece un esquema escalonado que contempla la moción de reconsideración, la revisión administrativa --cuando aplica-- y, finalmente, la revisión judicial. Este diseño responde a la política pública de procurar justicia y economía procesal, evitando que los tribunales intervengan prematuramente en asuntos que las agencias tienen la oportunidad de corregir. *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 622 (2018).

---

[4] Esta interpretación de derecho fue validada por nuestra Asamblea Legislativa, mediante la aprobación de la Ley Núm. 110-2022, cuando eliminó y añadió una nueva Sección 3.19 en aras de atemperar la LPAU, *supra*, en lo relacionado a los métodos de licitación esbozados en la Ley Núm. 73-2019.

Así, tan reciente como en *St. James Sec. v. AEE*, *supra*, reiteramos que las Secciones 3.19 y 4.2 de la LPAU, *supra*, son los estatutos que rigen los procesos para solicitar la revisión de adjudicaciones de los RFP. En específico, expresamos lo siguiente:

> **"[E]s la Sección 3.19 de la LPAU, infra, la que establece todo lo relacionado al procedimiento y término que tiene una parte, que ha sido afectada en un proceso de adjudicación de subasta o RFP, para solicitar la reconsideración o revisión administrativa de dicho dictamen, de entenderlo necesario."**
>
> […]
>
> Tras ese proceso de revisión administrativa, la Sección 4.2 de LPAU, infra, establece lo pertinente en cuanto al derecho de las partes a solicitar revisión judicial, bien sea luego de la correspondiente revisión administrativa, o cuando la agencia dejare de tomar alguna acción en cuanto a la antes mencionada revisión.
>
> […]
>
> Como se puede apreciar, **tanto en la Sección 3.19, como en la Sección 4.2 de la LPAU, supra, se disponen los procesos que deberá seguir toda parte que desee solicitar reconsideración de una determinación de adjudicación de un RFP o requerimiento de propuestas.**

*St. James Sec. v. AEE*, *supra*, págs. 380-382. (Énfasis y negrillas suplidos).

**C. Sección 3.19 de la LPAU**

En lo pertinente al asunto que nos ocupa, la Sección 3.19 de la LPAU, *supra*, establece un régimen especial aplicable a los procedimientos de licitación pública, en el cual se desglosan los procesos para solicitar la revisión administrativa y judicial de las adjudicaciones de subastas o RFP. 3 LPRA sec. 9659. En la última década, esta disposición de ley ha sido atemperada a las realidades de nuestra

sociedad, siendo el rol creciente de la Administración de Servicios Generales (ASG) uno de los cambios más sustanciales. A saber, el referido estatuto actualmente dispone que, los procesos de licitación pública se celebrarán conforme establece la Ley Núm. 73-2019, *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019*, 3 LPRA sec. 9831 et seq., con excepción de los procedimientos de licitación pública municipal y aquellos llevados a cabo por Entidades Exentas,[5] al momento de realizar compras y subastas <u>ajenas</u> a bienes, obras y servicios no profesionales. Íd. Sin embargo, la introducción de la Ley Núm. 73-2019, *supra*, como el estatuto rector en los procesos de licitación pública es relativamente novel.

---

[5] El Artículo 4(p) de la Ley Núm. 73-2019, supra, define las Entidades Exentas como aquellas entidades gubernamentales que no vienen obligadas a realizar sus compras a través de la ASG, ya sea por razón de operar bajo lo dispuesto en un plan fiscal vigente o por tratarse de entidades fiscalizadoras de la integridad del servicio público y la eficiencia gubernamental.

A saber, las siguientes se considerarán entidades exentas: Oficina de Ética Gubernamental, Oficina del Inspector General de Puerto Rico, Comisión Estatal de Elecciones, Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico, Banco Gubernamental de Fomento para Puerto Rico, Autoridad para las Alianzas Público Privadas de Puerto Rico, Autoridad para el Financiamiento de la Infraestructura de Puerto Rico, Autoridad de Acueductos y Alcantarillados, Autoridad de Energía Eléctrica, Autoridad de Carreteras y Transportación, Corporación del Proyecto ENLACE del Caño Martín Peña, la Corporación Pública para la Supervisión de Seguros de Cooperativas de Puerto Rico, programas e instalaciones de la Administración de Servicios Médicos de Puerto Rico, el Centro Médico, el Hospital Cardiovascular, el Hospital Universitario de Adultos, el Hospital Pediátrico Universitario, el Hospital Universitario Dr. Ramón Ruiz Arnau, <u>los Centros de Diagnóstico y Tratamiento e instalaciones de discapacidad intelectual adscritos al Departamento de Salud</u>, el Hospital Industrial y dispensarios regionales e intermedios, la Corporación del Fondo del Seguro del Estado, la Autoridad Metropolitana de Autobuses, la Autoridad de Edificios Públicos y la Oficina del (de la) Gobernador(a). 3 LPRA sec. 9831c. (Subrayado suplido).

### i.    Ley Núm. 170-1988: LPAU derogada

La Sección 3.19 de la derogada Ley de Procedimiento Administrativo del Estado Libre Asociado de Puerto Rico, 3 LPRA ant. sec. 2169, proveía para que una parte adversamente afectada impugnara la adjudicación de una subasta mediante la presentación de una moción de reconsideración ante la agencia o, en la alternativa, una solicitud de revisión ante la Junta Revisora de la ASG (Junta Revisora). Es decir, conforme a la antigua LPAU, el rol de la ASG estaba limitado a ser uno de los dos foros revisores en los cuales se podía impugnar la adjudicación de un proceso de licitación pública. En específico, este estatuto disponía que:

> Los procedimientos de adjudicación de subastas serán procedimientos informales; su reglamentación y términos serán establecidos por las agencias, pero siempre en estricto cumplimiento con la legislación sustantiva y procesal que aplica a las compras del Gobierno del Estado Libre Asociado de Puerto Rico y sin menoscabo de los derechos y obligaciones bajo la política pública y leyes vigentes en la jurisdicción de Puerto Rico. La parte adversamente afectada por una decisión podrá, dentro del término de veinte (20) días a partir del depósito en el correo federal notificando la adjudicación de la subasta, presentar una <u>moción de reconsideración ante la agencia</u>. **En la alternativa, podrá presentar una solicitud de revisión ante la Junta Revisora de la Administración de Servicios Generales o la entidad apelativa que corresponda en ley o reglamento**, dentro del término de veinte (20) días calendario, a partir del depósito en el correo notificando la adjudicación de la subasta. La agencia, la entidad apelativa o la Junta Revisora deberá considerar la moción de reconsideración o la solicitud de revisión, según sea el caso, dentro de los veinte (20) días de haberse presentado.
>
> […]
>
> <u>Si la agencia, la entidad apelativa o la Junta Revisora dejare de tomar alguna acción</u> con relación

a la moción de reconsideración o solicitud de revisión, dentro del término correspondiente, según dispuesto en esta Ley de los veinte (20) días de haberse presentado, se entenderá que ésta ha sido rechazada de plano, y a partir de esa fecha comenzará a correr el término para la revisión judicial.

[…]

(Negrillas y subrayado suplidos).

El texto de esta sección permaneció relativamente inalterado con la aprobación de la LPAU, *supra*, vigente. De hecho, la siguiente enmienda a la Sección 3.19 se limitó a reconocer la notificación por correo electrónico de la adjudicación de subastas como punto de partida para solicitar su reconsideración o revisión dentro de los términos pertinentes.[6] Es decir, aun después de haberse aprobado la LPAU, *supra*, y la Ley Núm. 73-2019, *supra*, los métodos para solicitar revisión permanecieron siendo la moción de reconsideración ante la agencia, o en la alternativa, la solicitud de revisión ante la Junta Revisora.

### ii.   Ley Núm. 110-2022: una nueva Sección 3.19

Posteriormente, la Asamblea Legislativa aprobó la Ley Núm. 110-2022 con el fin de atemperar la Sección 3.19 al ordenamiento jurídico promulgado por la Ley Núm. 73-2019, *supra*.[7] En su Exposición de Motivos, explicó que, con la aprobación de la Ley Núm. 73-2019, *supra*, estableció como política pública la centralización de los procesos de compras gubernamentales de bienes, obras y servicios, con miras de

---

[6] *Véase*, Ley Núm. 150 de 18 de noviembre de 2020.
[7] Véase, Ley Núm. 110 de 22 de diciembre de 2022.

lograr obtener mayores ahorros fiscales en beneficio del pueblo puertorriqueño. De esta manera, indicó que la ASG es la agencia encargada de implementar esta política pública y dirigir los procesos pertinentes a las adquisiciones del Gobierno de Puerto Rico. Así, la Legislatura cambió el texto de la Sección 3.19 a los efectos de modificar las dos alternativas existentes para la impugnación de un proceso de licitación pública, a saber, la moción de reconsideración y la revisión ante la Junta Revisora.[8] En el caso de la moción de reconsideración, dispuso que esta podía ser presentada por la parte adversamente afectada **"ante la ASG o ante la entidad gubernamental correspondiente, según sea el caso"**. En otras palabras, la Legislatura extendió el poder de la ASG para, además de atender recursos de revisión administrativa ante la Junta Revisora, evaluar solicitudes de reconsideración presentadas ante sí. En específico, la nueva Sección 3.19 disponía lo siguiente:

> Los procedimientos de adjudicación de subastas o solicitud de propuestas serán informales; su reglamentación y términos serán establecidos por la Administración de Servicios Generales en estricto cumplimiento con los procedimientos que establece la Ley 73-2019, según enmendada, sin menoscabo de los derechos y obligaciones de los licitadores bajo la política pública y leyes vigentes en la jurisdicción de Puerto Rico.
>
> **La parte adversamente afectada por una decisión podrá presentar una moción de reconsideración ante la Administración de Servicios Generales o ante la entidad gubernamental correspondiente,** según sea el caso, dentro del término de diez (10) días desde la fecha

---

[8] La "revisión ante la Junta Revisora" establecida en la Sección 3.19 que fue reemplazada por la Ley Núm. 110-2022, ahora es conocida como "recurso de revisión administrativa".

de la notificación de la adjudicación de la subasta o propuesta. La Administración de Servicios Generales o la entidad gubernamental correspondiente, según sea el caso, deberá considerar la moción de reconsideración dentro de los diez (10) días laborables de haberse presentado. Si se tomare alguna determinación en su consideración, el término para instar el recurso de revisión judicial empezará a contarse desde la fecha en que se archive en autos, copia de la notificación de la decisión de la Administración de Servicios Generales o la entidad gubernamental correspondiente, según sea el caso, resolviendo la moción de reconsideración. Si la fecha de archivo en autos de copia de la notificación de la orden o resolución es distinta a la del depósito en el correo ordinario o del envío por medio electrónico de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo ordinario o del envío por medio electrónico, según corresponda. Si la Administración de Servicios Generales o la entidad gubernamental correspondiente, según sea el caso, dejare de tomar alguna acción con relación a la moción de reconsideración dentro de los diez (10) días de haberse presentado, se entenderá que esta ha sido rechazada de plano, y a partir de esa fecha comenzará a correr el término para la revisión judicial.

Si la Administración de Servicios Generales o la entidad gubernamental correspondiente, según sea el caso, acoge la solicitud de reconsideración dentro del término provisto para ello, deberá emitir la resolución en reconsideración dentro de los treinta (30) días siguientes a la radicación de la moción de reconsideración. Si la Administración de Servicios Generales o la entidad gubernamental correspondiente, según sea el caso, acoge la moción de reconsideración, pero dejase de tomar alguna acción con relación a la moción dentro de los treinta (30) días de esta haber sido radicada, perderá jurisdicción sobre la misma y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de treinta (30) días. La Administración de Servicios Generales o la entidad gubernamental correspondiente, según sea el caso, podrá extender dicho término una sola vez, antes de que este culmine, por un término adicional de quince (15) días.

[…]

(Negrillas y subrayado suplidos).

Por consiguiente, esta enmienda tuvo el efecto de proveerle a una parte adversamente afectada la opción de elegir a cuál foro acudir para solicitar la reconsideración, la ASG o la entidad gubernamental correspondiente, dependiendo el caso. Esto es así, pues la Ley Núm. 73-2019, *supra*, es el estatuto que rige los procesos de compras y subastas de bienes, obras y <u>servicios no profesionales</u> en las Entidades Gubernamentales, pero nada dispone sobre su facultad para dirigir los procesos pertinentes a servicios profesionales.[9] 3 LPRA sec. 9831b. De esta manera, la ASG solamente podría atender mociones de reconsideración pertinentes a los asuntos delegados por su ley habilitadora, mientras que la agencia tendría la facultad para atender todas aquellas que se presentaran ante sí.

### iii. Ley Núm. 48-2024: Sección 3.19 vigente

Así las cosas, la Sección 3.19 establecida por la Ley Núm. 110-2022, ha sido enmendada en dos ocasiones.[10] En lo pertinente a lo que nos ocupa, las enmiendas promulgadas por la Ley Núm. 48-2024 son las que hoy estamos llamados a

---

[9]     La Ley Núm. 73-2019, *supra*, hace una distinción entre servicios profesionales y no profesionales.
        Por un lado, define los <u>servicios profesionales</u> como aquellos que son ofrecidos por una persona natural o jurídica con conocimientos o habilidades especializadas, y a quien se le requiere poseer un título universitario o licencia que lo acredite como profesional especializado. A su vez, son aquellos servicios cuya prestación principal pudiese consistir en el producto de la labor intelectual, creativa o artística, o en el manejo de destrezas altamente técnicas o especializadas por quien los ofrece. Íd.
        En cambio, los <u>servicios no profesionales</u> son aquellos que no requieren conocimientos o habilidades especializadas por la persona que los ofrezca, ni mucho menos un título universitario o licencia que lo acredite como profesional especializado. Íd.
[10] Véanse, Ley Núm. 48 de 19 de febrero de 2024 y Ley Núm. 153 de 12 de agosto de 2024. 3 LPRA sec. 9659.

atender, ya que **han creado confusión en cuanto al procedimiento de revisión pertinente a un proceso de licitación pública de servicios profesionales.**

Como hemos discutido a través de esta ponencia, previo a la aprobación de la Ley Núm. 110-2022, la Sección 3.19 de la LPAU proveía dos opciones para la impugnación de un RFP, a saber, la moción de reconsideración ante la agencia y la revisión ante la Junta Revisora. No obstante, una vez entró en vigor el referido estatuto, la Asamblea Legislativa modificó su texto, a los efectos de disponer las siguientes opciones de impugnación: (1) **"presentar una moción de reconsideración ante la Administración de Servicios Generales o ante la entidad gubernamental correspondiente, según sea el caso";** y, en la alternativa, (2) "presentar un recurso de revisión administrativa ante la Junta Revisora". Así, tras concederle la facultad a la ASG para atender mociones de reconsideración sobre adjudicaciones de licitación pública, la Asamblea Legislativa indicó que este cambio podía tener el efecto de generar confusión en nuestro ordenamiento jurídico y aprobó la Ley Núm. 48-2024.

En específico, la Legislatura expresó lo siguiente en su Exposición de Motivos:

> [L]o expresado en la legislación puede provocar que distintos licitadores acudan a foros distintos, a saber, la ASG o la agencia o la Junta Revisora y que presenten recursos distintos, ya sea uno de reconsideración o de revisión administrativa. Lo anterior implica que una parte adversamente afectada podría hacer una cosa o la otra: solicitar la reconsideración ante la agencia o solicitar la "revisión" ante la Junta Revisora o

el ente apelativo. Por lo tanto, **la actual legislación no atiende el choque jurisdiccional que podría surgir cuando dos partes adversamente afectadas por una misma adjudicación acuden, una en "reconsideración' ante la agencia y la otra en "revisión administrativa", ante el ente apelativo o a la Junta Revisora.**

(Énfasis suplido).

Ante el posible "choque jurisdiccional" surgido a raíz del texto de la referida ley, la Legislatura decidió eliminar el recurso de reconsideración y establecer la revisión administrativa como el "[m]ecanismo exclusivo para atender las impugnaciones de las subastas". Además, dispuso que la Junta Revisora sería el único organismo encargado de atender estos recursos.[11] Exposición de Motivos de la Ley Núm. 48-2024, pág. 7. Así, tras reconocer el recurso de revisión administrativa como el único mecanismo para impugnar adjudicaciones en los procesos de licitación pública, lo catalogó como un requisito jurisdiccional para instar un recurso de revisión judicial ante el Tribunal de Apelaciones. Íd., págs. 7-8. De esta manera, la versión más actualizada de la Sección 3.19 de la LPAU, supra, dispone lo siguiente:

[L]a parte adversamente afectada por una determinación en un proceso de licitación pública **podrá presentar una solicitud de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales** dentro del término de diez (10) días calendario, contados a partir del depósito en el correo federal o la

---

[11] En específico, la Asamblea Legislativa hizo constar en su Exposición de Motivos que:

"[E]ste lenguaje mandata aclaración inmediata, por lo que mediante esta medida legislativa **se elimina el recurso de "reconsideración", se establece la "revisión administrativa" como el único mecanismo para atender las impugnaciones de las subastas y se dispone que la Junta Revisora será el único organismo para entender sobre los recursos de revisión administrativa."**

(Negrillas suplidas).

notificación por correo electrónico, lo que ocurra primero, de la adjudicación del proceso de licitación pública.

[…]

**La presentación del recurso de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales será un requisito jurisdiccional antes de presentar un recurso de revisión judicial ante el Tribunal de Apelaciones.**

La parte adversamente afectada tendrá un término jurisdiccional de veinte (20) días calendario para presentar un recurso de revisión judicial ante el Tribunal de Apelaciones, contados a partir del depósito en el correo federal o de remitida la determinación por correo electrónico, lo que ocurra primero, ya sea de la adjudicación de la solicitud de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales, o cuando venza el término que tenía la Junta Revisora de Subastas de la Administración de Servicios Generales para determinar si acogía o no la solicitud de revisión administrativa.

**La notificación de la adjudicación del proceso de licitación pública deberá incluir las garantías procesales establecidas en la Ley 73 2019 relativas a los fundamentos para la adjudicación y el derecho y los términos para solicitar revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales y revisión judicial.**

[…]

(Énfasis y negrillas suplidos).

Al atribuirle carácter jurisdiccional al recurso de revisión administrativa ante la Junta Revisora de la ASG, la Legislatura persiguió uniformidad y certeza en este tipo de procesos. Sin embargo, la Ley Núm. 73-2019, *supra*, es categórica en cuanto a su alcance como el cuerpo legislativo que rige los procesos de adquisición de bienes, obras y servicios no profesionales. 3 LPRA sec. 9831b. Además, en

cuanto a la jurisdicción que le otorga esta ley a la Junta Revisora, este es el ente que está facultado para revisar cualquier impugnación de determinaciones o adjudicaciones hechas por la Administración Auxiliar del Área de Adquisiciones, por la Junta de Subastas de la ASG o por las Juntas de Subastas de las Entidades Exentas.[12] 3 LPRA sec. 9837.

Es decir, al momento de impugnar un proceso de licitación pública por servicios profesionales, la Sección 3.19 de la LPAU, *supra*, provee el recurso de revisión administrativa ante la Junta Revisora de la ASG como el mecanismo exclusivo para ello, y además, lo cataloga como un requisito jurisdiccional para acudir al TA mediante revisión judicial. No obstante, **la ley habilitadora de la ASG no concede a la agencia el poder para regular los procesos de adquisición de servicios profesionales**, y la Junta Revisora está limitada a atender decisiones tomadas por foros particulares. Por consiguiente, tras realizar un análisis integral de todas las disposiciones de ley mencionadas,

---

[12] Nótese que, la LPAU, *supra*, expresamente dispone que la parte adversamente afectada **"podrá presentar una solicitud de revisión administrativa ante la Junta Revisora"**, sin particularizar que la decisión recurrida sea emitida por un foro en específico.

Por su parte, el Art. 64 la Ley Núm. 73-2019, supra, lee como sigue:

**La parte adversamente afectada por una decisión de la Administración, de la Junta de Subastas o de cualquier Junta de Subastas de Entidad Exenta** podrá, dentro del término de diez (10) días calendario a partir del depósito en el correo federal o correo electrónico notificando la adjudicación de la subasta, presentar una solicitud de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales. 3 LPRA sec. 9838a. (Énfasis y negrillas suplidos).

justipreciamos que las enmiendas realizadas a la Sección 3.19, mediante la Ley Núm. 48-2024, crearon una laguna en nuestro ordenamiento jurídico.

### D. Normas de hermenéutica jurídica

Sabido es que al ejercer nuestra encomienda de interpretar las leyes, el primer paso es remitirnos al texto de la ley, puesto que cuando la ley es clara y libre de ambigüedades, su texto es la expresión por excelencia de la intención legislativa. *Rosado Molina v. ELA y otros*, 195 DPR 581, 589 (2016). Así, las normas de hermenéutica jurídica requieren que hagamos cumplir la intención del legislador. *Cabrera Rodríguez y otros v. Integrand*, 2025 TSPR 127, 217 DPR ____ (2025); *JJJ Adventure v. Consejo de Titulares y otros*, 2025 TSPR 123, 216 DPR ____ (2025). De esta manera, al momento de interpretar un estatuto debemos atribuirle "un sentido que asegure el resultado que originalmente se quiso obtener". Íd. citando a *Méndez Pabón et al. v. Alcalde de Aguadilla*, 151 DPR 853, 858-859 (2000).

En lo pertinente a lo que nos ocupa, hemos expresado que, al interpretar el alcance de los poderes delegados a una agencia administrativa, no se debe limitar el análisis a una interpretación restrictiva de su estatuto habilitador, sino que debe ser cónsona con la intención legislativa, la política pública y el interés social que inspira la medida. *JJJ Adventure v. Consejo de Titulares y otros*, *supra*. Esto es así, pues las agencias solo pueden realizar las funciones encomendadas legislativamente, las que surgen de su

actividad o encomienda principal, y las que sean indispensables para llevar a cabo sus deberes y responsabilidades. *Amieiro González v. Pinnacle Real Estate*, 173 DPR 363, 371 (2008).

De igual manera, en materia de hermenéutica rige la norma de que, cuando hay conflicto entre dos estatutos, uno de carácter general y otro de carácter especial, la ley de carácter especial prevalece sobre la de carácter general. *Cabrera Rodríguez y otros v. Integrand*, *supra*. Por tanto, solamente procede acudir a las leyes generales cuando existan deficiencias en la ley especial. Íd.

Asimismo, en la evaluación de una ley que guarda silencio sobre cierto asunto, causando resultados absurdos o no provistos, los tribunales debemos determinar si tal silencio corresponde a una laguna involuntaria por parte de la Asamblea Legislativa o si, por el contrario, estamos ante una omisión intencional por parte de ésta. *Negrón Castro et al. v. SLG et al.*, 2025 TSPR 96, 216 DPR \_\_\_\_ (2025) citando a *Acevedo Arocho v. Departamento de Hacienda*, 212 DPR 335, 358 (2023). Al adentrarnos en esa tarea, primero debemos recurrir al texto del estatuto, y luego al historial legislativo para determinar si las expresiones extratextuales del legislador clarifican si lo omitido fue inadvertido o intencional. J.M. Farinacci Fernós, *Hermenéutica puertorriqueña: Cánones de interpretación jurídica*, San Juan, Editorial, InterJuris, 2019, pág. 156. De entender que se trata de una omisión intencional, procede

dar fiel cumplimiento a la voluntad legislativa y, en consecuencia, no añadir lo omitido. Íd.

Por otro lado, si se determina que el silencio es producto de la inadvertencia legislativa, venimos llamados a llenar ese vacío. Íd. Para ello, nuestra jurisprudencia tiene la capacidad de complementar el ordenamiento jurídico y llenar los vacíos, lagunas u omisiones no deseadas por el legislador. Íd. págs. 156-157; 31 LPRA sec. 5312. Además, el Código Civil de Puerto Rico de 2020 establece que tenemos el deber inexcusable de resolver los asuntos ante nuestra consideración, independientemente exista silencio, obscuridad, o insuficiencia de la ley. 31 LPRA sec. 5316. De esta manera, tenemos la encomienda de ejercer nuestra función interpretativa para así evitar los efectos nocivos de no corregir una laguna involuntaria.[13]

## III

En el recurso ante nuestra consideración, RedMane señala que el Tribunal de Apelaciones erró al determinar que el derecho a solicitar revisión de la adjudicación de licitación pública de autos se rige por la Sección 3.15 de la LPAU, *supra*, con exclusión de las Secciones 3.19 y 4.2 del mismo estatuto. En específico, nos solicita que tomemos conocimiento de que la notificación realizada por el DSPR

---

[13] La Asamblea Legislativa siempre podrá corregir nuestra actuación de entender que: (1) no se trató de una laguna involuntaria, sino una omisión intencional; o (2) difiere de la manera en que la referida laguna fue atendida. J.M. Farinacci Fernós, *Hermenéutica puertorriqueña: Cánones de interpretación jurídica*, San Juan, Editorial, InterJuris, 2019, pág. 157.

el 14 de noviembre de 2024 fue realizada defectuosamente; que pautemos la interpretación correcta que se le debe dar a la LPAU, *supra*, en materia de procesos de revisión de licitación pública; y que ordenemos al DSPR a notificar la adjudicación conforme a derecho. Le asiste la razón parcialmente.

En primer lugar, es menester que nos expresemos sobre el único señalamiento de error que realizó la parte peticionaria. En su petitorio, RedMane correctamente sostiene que la Sección 3.19 de la LPAU, *supra*, es la disposición que regula todo lo relacionado al procedimiento y los términos para solicitar reconsideración o revisión administrativa de un proceso de adjudicación de licitación pública. No obstante, se equivoca al señalar que el Tribunal de Apelaciones resolvió en su *Sentencia* que la revisión de la adjudicación de RFP del caso de epígrafe se rige por los términos de la Sección 3.15 de la LPAU, *supra*. Con una lectura sencilla del dictamen recurrido, podemos corroborar que el Tribunal de Apelaciones en ningún momento mencionó la Sección 3.15 de la LPAU, *supra*. Al contrario, en contravención al señalamiento de RedMane, el foro intermedio hizo referencia a las Secciones 3.19 y 4.2 de la LPAU, *supra*, como el cuerpo legal que gobierna lo relacionado al proceso de revisión de la adjudicación de subastas y RFP.

En su dictamen, tras desglosar las Secciones 3.19 y 4.2 de la LPAU, *supra*, el Tribunal de Apelaciones ordenó devolver el caso ante la consideración del DSPR para que

emitiera una nueva notificación de adjudicación, conforme a derecho. En específico, resolvió lo siguiente:

[…]

Según adelantado, luego de examinar con detenimiento el expediente, los argumentos de las partes y los anejos pertinentes, notamos que estamos privados de jurisdicción en este caso. **Resulta evidente que el DSPR cometió un error en la notificación del RFP concernido, específicamente en las advertencias a las partes adversamente afectadas para presentar un recurso administrativo y/o judicial.** Al momento de dictar el Award Notification Elegibility and Enrollment System Takeover, la LPAUG disponía de forma clara que los términos para dichos trámites se computan en "días calendario" y no "días laborables".

Como vemos, **la inobservancia por parte del DSPR provocó que la notificación emitida el 14 de noviembre de 2024 no se pueda considerar como una adecuada, válida y efectiva, pues para ello resultaba indispensable que se plasmara la información que nuestro estado de derecho especifica, en particular, la manera correcta en la que se computan los términos para impugnar la adjudicación del RFP.** Por consiguiente, la notificación de adjudicación de la solicitud de propuestas aquí en controversia fue una defectuosa.

Ante la inobservancia de los postulados que gobiernan el asunto ante nuestra consideración, **nos vemos precisados a devolver el caso al DSPR para que emita un dictamen conforme a nuestro ordenamiento jurídico y lo notifique nuevamente a los licitadores.** Solo así la parte perjudicada podrá formular una apropiada defensa y este Foro apelativo podrá revisar y resolver los méritos de la causa. L.P.C. & D., Inc. v. A.C., supra, a la pág. 879. En suma, resulta forzoso concluir que no tenemos jurisdicción para atender el recurso de epígrafe, pues resulta prematuro.

(Énfasis suplido).

Así, el Tribunal de Apelaciones determinó que la primera notificación emitida por el DSPR, el 14 de noviembre de 2024, fue defectuosa. En cuanto a esta, coincidimos con

el foro apelativo intermedio de que es nula, por clasificar erróneamente los términos para la revisión judicial como "días laborables", en lugar de "días calendario". Además, la referida notificación contiene una advertencia en donde se le indica a las partes que tendrán diez días laborables desde la fecha de notificación para presentar una moción de reconsideración ante el DSPR, en contravención con lo que dispone la Sección 3.19 de la LPAU, *supra*. En otras palabras, la notificación emitida por el DSPR indujo erróneamente a las partes adversamente afectadas a utilizar el remedio general de reconsideración que dispone la Sección 3.15 de la LPAU, *supra*. Este defecto provocó que la notificación no se pueda considerar como adecuada, válida y efectiva, pues impidió que las partes conocieran con certeza el foro y los términos correctos para canalizar su impugnación.

Aun así, es evidente que, a pesar de que el señalamiento de error planteado por RedMane no va acorde con la determinación del Tribunal de Apelaciones, el referido dictamen ha generado confusión. A saber, después de que la *Sentencia* recurrida fuese notificada el 3 de febrero de 2025, el DSPR notificó otro *Award Notification*, el 11 de febrero de 2025, enmendando las advertencias para solicitar reconsideración y revisión judicial, conforme las Secciones 3.15 y 4.2 de la LPAU, *supra*. Es decir, tras ser notificado de la *Sentencia*, el DSPR, sin que esta adviniera final y firme, volvió a emitir una notificación defectuosa. Posterior a ello y una vez iniciado el pleito ante nos, el

DSPR expresó que la notificación debía incluir los términos dispuestos en la Sección 3.19 de la LPAU, *supra*, aun cuando "los procedimientos de requerimiento de propuesta de servicios profesionales no son revisables ante la Junta Revisora".

Ante este cuadro fáctico, comenzamos por reafirmar que el caso de epígrafe tiene su origen en la adjudicación de un RFP llevado a cabo por el DSPR, con el fin de seleccionar un proveedor cualificado para la administración del sistema de elegibilidad e inscripción del Programa Medicaid Puerto Rico. Por consiguiente, **al este ser un proceso de licitación pública de servicios profesionales por el DSPR, queda meridianamente claro que deben ser de aplicación las disposiciones de la LPAU, *supra*, particularmente las que establecen lo referente al proceso de subasta o requerimientos de propuestas, y sus respectivas revisiones administrativas y/o judiciales**. Sin embargo, al realizar una interpretación integral de las Secciones 3.19 y 4.2 de la LPAU, *supra*, y la Ley Núm. 73-2019, *supra*, **nos hemos percatado que las enmiendas aprobadas en el año 2024 crearon un resultado improvisto en cuanto al procedimiento de revisión pertinente a un proceso de licitación pública de servicios profesionales.**[14]

Cónsono con lo que hemos esbozado hasta el momento, antes de estas enmiendas, la Sección 3.19 de la LPAU **proveía**

---

[14] *Véase*, Ley Núm. 48 de 19 de febrero de 2024 y Ley Núm. 153 de 12 de agosto de 2024. 3 LPRA sec. 9659.

**dos alternativas para la impugnación de un RFP**, previo a la presentación de un recurso de revisión judicial ante el Tribunal de Apelaciones. A saber, la parte adversamente afectada podía: (1) "presentar una moción de reconsideración ante la Administración de Servicios Generales **o ante la entidad gubernamental correspondiente, según sea el caso**"; y, en la alternativa, (2) "presentar un recurso de revisión administrativa ante la Junta Revisora". De igual manera, la LPAU derogada también proveía dos opciones para este tipo de impugnación, a saber: (1) "presentar una moción de reconsideración ante la agencia"; y, en la alternativa, "presentar una solicitud de revisión ante la Junta Revisora".

No obstante, con la aprobación de la Ley Núm. 73-2019, *supra*, la Legislatura fue atemperando la Sección 3.19 hasta la que hoy tenemos. Así, con las enmiendas realizadas mediante la Ley Núm. 48-2024, la Asamblea Legislativa decidió eliminar la vía de la reconsideración con el propósito de atender el "choque jurisdiccional que podría surgir cuando dos partes adversamente afectadas por una misma adjudicación acuden, una en "reconsideración" ante la agencia y la otra en "revisión administrativa", ante el ente apelativo o a la Junta Revisora". Exposición de Motivos de la Ley Núm. 48-2024, pág. 7. Así, tras reconocer el recurso de revisión administrativa como el único mecanismo para impugnar adjudicaciones en los procesos de licitación pública, lo catalogó como un requisito jurisdiccional para

instar un recurso de revisión judicial ante el Tribunal de Apelaciones. Íd., págs. 7-8.

De esta manera, la versión enmendada de la Sección 3.19 de la LPAU, *supra*, dispone que la parte adversamente afectada solamente podrá presentar una solicitud de revisión administrativa ante la Junta Revisora de la ASG, previo a que comience a cursar el término jurisdiccional para instar el recurso de revisión judicial. 3 LPRA sec. 9659. Cónsono con lo anterior, establece que la notificación de la adjudicación "deberá incluir las garantías procesales establecidas en la Ley 73-2019 relativas a los fundamentos para la adjudicación y el derecho y los términos para solicitar revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales y revisión judicial." Íd. **Esto así, a pesar de que la Ley Núm. 73-2019, *supra*, es categórica en cuanto a la jurisdicción que ostenta la agencia y los foros a los cuales la Junta Revisora puede revisar.**[15]

De su faz, la adjudicación de un proceso de licitación pública por servicios profesionales no se encuentra dentro del alcance de la ASG o su Junta Revisora. En consecuencia, al otorgarle carácter jurisdiccional a un recurso que solamente puede ser atendido por la Junta Revisora de la ASG, **justipreciamos que la Sección 3.19 de la LPAU, *supra*, guarda silencio sobre el procedimiento a seguir para**

---

[15] Véase, 3 LPRA sec. 9831b, 9837, 9837b, 9838a-9838e.

**impugnar la adjudicación de un proceso de licitación pública que no esté regulado por la Ley Núm. 73-2019,** *supra*. Por tanto, conforme las normas de hermenéutica jurídica, estamos llamados a determinar si tal silencio corresponde a un resultado no provisto o una omisión intencional por parte de la Asamblea Legislativa.

Así las cosas, tras evaluar el historial legislativo de la Ley Núm. 48-2024, **es evidente que las enmiendas realizadas se hicieron con el propósito de propiciar la uniformidad y certeza de los procesos de licitación pública regulados por la Ley Núm. 73-2019,** *supra*. A saber, en su Exposición de Motivos, la Legislatura nunca mencionó los servicios profesionales en el contexto de los cambios que se realizarían a la Sección 3.19.[16] Incluso, al exponer su razonamiento para eliminar la vía de la reconsideración y otorgarle carácter jurisdiccional a la revisión administrativa ante la Junta Revisora, la Asamblea Legislativa expresó lo siguiente:

> Esta Ley además reconoce el recurso de revisión administrativa como el único recurso para impugnar las adjudicaciones **en los procesos de licitación pública regulados por la Ley 73,** *supra*, y dispone que su presentación es un requisito jurisdiccional antes de presentar un recurso de revisión judicial. Lo anterior elimina las confusas opciones que la legislación le otorgaba a las partes y que provocaba que las partes presentaran tanto el recurso de reconsideración como el de revisión administrativa en foros distintos.

---

[16] Véase, Exposición de Motivos de la Ley Núm. 48-2024, págs. 22-23 para observar la única mención de servicios profesionales en esta ley.

Exposición de Motivos de la Ley Núm. 48-2024, pág. 8.

(Énfasis y negrillas suplidos).

Por consiguiente, entendemos que el resultado no provisto generado por las enmiendas discutidas, en cuanto a los procesos de licitación pública que no son regulados por la Ley Núm. 73-2019, *supra*, es producto de inadvertencia legislativa. Por lo tanto, estamos llamados a llenar ese vacío.

De ordinario, **teniendo ante nuestra consideración la adjudicación de un proceso de licitación pública, toda notificación de la misma debería incluir las advertencias pertinentes, conforme establecen las Secciones 3.19 y 4.2 de la LPAU,** *supra*. Esto es así pues, para que una determinación en un proceso de licitación pública se realice conforme a derecho, la notificación de la adjudicación deberá incluir las garantías procesales establecidas en nuestro ordenamiento jurídico, relativas a los fundamentos para la adjudicación y el derecho, y los términos para solicitar revisión administrativa ante la Junta Revisora y revisión judicial ante el Tribunal de Apelaciones. 3 LPRA sec. 9659. No obstante, conforme al análisis que hemos realizado de la Ley Núm. 48-2024 y la Ley Núm. 73-2019, *supra*, **la Junta Revisora de la ASG no tiene la facultad estatutaria para revisar adjudicaciones de procesos de licitación pública por servicios profesionales.** Entendemos que, si la Asamblea Legislativa hubiese querido extender la jurisdicción de este ente revisor, hubiese legislado a esos

efectos. Ante este cuadro fáctico, RedMane pudo haber presentado un recurso de revisión administrativa ante la Junta Revisora de la ASG, y por tratarse de una adjudicación de RFP por servicios profesionales, la Junta Revisora no hubiese tenido la facultad estatutaria para atenderlo. Dicho de otra manera, el requisito jurisdiccional que tendría que cumplir RedMane para acudir mediante revisión judicial al TA, es improcedente en derecho.

Por consiguiente, **resolvemos que, cuando se trate de impugnar la adjudicación de un proceso de licitación pública no regulado por la Ley Núm. 73-2019,** *supra*, **el recurso de revisión administrativa ante la Junta Revisora de la ASG no será un requisito jurisdiccional para acudir al Tribunal de Apelaciones mediante revisión judicial.** De esta manera, honramos la ley habilitadora de la ASG y las facultades delegadas a su Junta Revisora.

A su vez, en vista de que la intención legislativa detrás de la eliminación de la moción de la reconsideración de la Sección 3.19 de la LPAU, *supra*, se limitó a los procedimientos de licitación pública regulados por la Ley Núm. 73-2019, *supra*, **resolvemos que esta vía procesal permanecerá disponible hasta que la Asamblea Legislativa disponga lo contrario.** En específico, decretamos que en situaciones que no estén reguladas por esta ley, como lo son los procedimientos de licitación pública por servicios profesionales, los foros administrativos pertinentes podrán formular reglamentación a los efectos de proveerle la

oportunidad de solicitar reconsideración ante sí a toda parte adversamente afectada, dentro de los términos provistos por la Sección 3.19, siempre y cuando su ley habilitadora se lo permita.[17]

Conforme a lo previamente esbozado, en los procedimientos de licitación pública que no sean regulados por la Ley Núm. 73-2019, *supra*, será defectuosa toda notificación que no advierta a las partes sobre su derecho a presentar: (1) una solicitud de reconsideración ante la agencia cuando así lo disponga su reglamentación aplicable, dentro del término de diez días calendario, contados a partir del depósito en el correo federal o la notificación por correo electrónico de la adjudicación del proceso, lo que ocurra primero; y (2) un recurso de revisión judicial ante el Tribunal de Apelaciones dentro del término jurisdiccional de veinte días calendario, contados a partir de la notificación de la adjudicación de la solicitud de reconsideración ante la agencia o cuando venza el término de esta para acogerla, lo que ocurra primero. Por analogía, los términos para atender la moción de reconsideración serán

---

[17] En el caso ante nos, el 21 de diciembre de 2023, el DSPR promulgó la Orden Administrativa Núm. OA-581 con el propósito de establecer los procedimientos aplicables a la contratación de servicios profesionales por la cantidad de $150,000 o más en un mismo año fiscal. Mediante esta, dispuso los requisitos de contenido que debía incluir toda notificación de adjudicación en estos procesos, incluyendo lo pertinente al apercibimiento sobre el derecho a revisión, "conforme a lo establecido… en la LPAU". No obstante, esta orden administrativa fue promulgada antes de las enmiendas de la Ley Núm. 48-2024, por lo que el texto de la misma alude estar basada en una versión de la LPAU, *supra*, que ya no está en vigor, y dispone unos términos incongruentes con la legislación vigente.

los mismos que establece la Sección 3.19 de la LPAU,[18] *supra*, para el recurso de revisión administrativa ante la Junta Revisora. 3 LPRA sec. 9659. En el caso de que el foro administrativo no provea para el recurso de reconsideración ante sí, el término jurisdiccional de veinte días calendario para solicitar revisión judicial ante el TA comenzará a cursar a partir del depósito en el correo federal o la notificación por correo electrónico de la adjudicación del proceso de licitación pública, lo que ocurra primero.

Como hemos reiterado, el esquema de licitación pública constituye un pilar esencial de la contratación gubernamental, pues procura que las agencias adquieran bienes y servicios de calidad al mejor precio posible, mediante un proceso abierto y competitivo que salvaguarde el erario y promueva la confianza ciudadana. *St. James Sec. v. AEE*, *supra*, pág. 377; *Super Asphalt v. AFI y otro*, *supra*, pág. 820. En armonía con dicha política pública, la Ley Núm. 73-2019, *supra*, centralizó los procesos de adquisición de obras, bienes y servicios no profesionales en la ASG para uniformar las prácticas de licitación, evitar la fragmentación normativa y garantizar transparencia. En este contexto, la notificación de adjudicación no es un mero formalismo, sino que es el acto que activa los remedios de revisión administrativa y judicial. Sin una notificación conforme a derecho, los licitadores quedarían desprovistos

---

[18] Cabe señalar que la Sección 3.15 de la LPAU no resulta aplicable en el presente caso por regular el remedio general de reconsideración en procedimientos administrativos ordinarios.

de mecanismos efectivos para impugnar irregularidades en el proceso. Así las cosas, al atender el vacío que nuestra Asamblea Legislativa estableció inadvertidamente cuando enmendó las Secciones 3.19 y 4.2 de la LPAU, *supra*, podemos asegurar que los licitadores cuenten con un aviso válido, claro y uniforme que les permita ejercer adecuadamente su derecho a revisión.

En vista de lo anterior, actuó correctamente el Tribunal de Apelaciones al declararse sin jurisdicción para atender los reclamos de la parte peticionaria por concluir que, ante una notificación defectuosa, el recurso era prematuro. Conforme a lo establecido en este dictamen, la notificación de adjudicación del RFP ante nuestra consideración deberá incluir las advertencias sobre el derecho de toda parte adversamente afectada a presentar un recurso de revisión judicial ante el Tribunal de Apelaciones dentro del término jurisdiccional de veinte días calendario, contados a partir del depósito en el correo federal o la notificación por correo electrónico de la adjudicación por el DSPR.[19]

## IV

Por los fundamentos antes expuestos, se expide el recurso de epígrafe y se confirma la sentencia emitida por el Tribunal de Apelaciones. Se devuelve el caso al DSPR para que emita una notificación de adjudicación, conforme a las exigencias aplicables de las Secciones 3.19 y 4.2 de la

---

[19] Recalcamos que la Orden Administrativa Núm. OA-581 del DSPR no es de aplicación ya que está amparada en una sección de la LPAU que fue derogada y sustituida previo a la adjudicación del RFP ante nuestra consideración. Prospectivamente, el DSPR podrá atemperar su reglamentación al derecho vigente para así proveer la vía de la moción de reconsideración ante sí, como requisito previo a presentar el recurso de revisión judicial ante el TA.

LPAU, *supra*, y lo aquí promulgado, sin la necesidad de esperar por nuestro mandato.

A tenor con lo esbozado, reiteramos que, en los procesos de licitación pública regulados por la Ley Núm. 73-2019, *supra*, la notificación de la adjudicación deberá incluir las garantías procesales establecidas en las Secciones 3.19 y 4.2 de la LPAU, *supra*. En cuanto a los casos a los que no sean de aplicación las disposiciones de la Ley Núm. 73-2019, *supra*, el recurso de revisión administrativa ante la Junta Revisora de la ASG no será un requisito jurisdiccional para acudir al Tribunal de Apelaciones mediante revisión judicial.

Se dictará Sentencia en conformidad.

Raúl A. Candelario López
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Redmane Technology, LLC<br><br>Peticionario<br><br>v.<br><br>Departamento de Salud y D2SOL,<br><br>Inc., et als.<br><br>Recurridos | AC-2025-0025 | |

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de abril de 2026.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se expide el recurso de epígrafe y se confirma la Sentencia emitida por el Tribunal de Apelaciones. Se devuelve el caso al Departamento de Salud de Puerto Rico para que emita una notificación de adjudicación, sin la necesidad de esperar por nuestro mandato, conforme a las exigencias aplicables de las Secciones 3.19 y 4.2 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9601, et seq. (LPAU), y lo promulgado en esta *Opinión*.

A tenor con lo esbozado, reiteramos que, en los procesos de licitación pública regulados por la *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019*, 3 LPRA sec. 9831 et seq. (Ley Núm. 73-2019), la notificación de la adjudicación deberá incluir las garantías procesales establecidas en las Secciones 3.19 y 4.2 de la LPAU. En cuanto a los casos a los que no sean de aplicación las disposiciones de la Ley Núm. 73-2019, el recurso de revisión administrativa ante la Junta Revisora de la Administración de Servicios Generales no será un requisito jurisdiccional para acudir al Tribunal de Apelaciones mediante revisión judicial.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emite una Opinión concurrente en parte y disidente en parte a la cual se le une la Jueza Presidenta Oronoz Rodríguez. El Juez Asociado señor Colón Pérez emite una Opinión disidente.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| RedMane Technology, LLC<br><br>Peticionario<br><br>v.<br><br>Departamento de Salud y otros<br><br>Recurridos | AC-2025-0025 | *Certiorari* |

Opinión concurrente en parte y disidente en parte del Juez Asociado Señor ESTRELLA MARTÍNEZ a la cual se une la Jueza Presidenta ORONOZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 10 de abril de 2026.

En primer lugar, hoy correspondía concluir que el Tribunal de Apelaciones debió atender los méritos de la impugnación de la adjudicación del requerimiento de propuesta que presentó RedMane Technology, LLC, de conformidad con lo resuelto en *PR Eco Park et al. v. Mun. de Yauco, infra,* en lugar de devolver la controversia a la agencia administrativa para que se llevara a cabo una nueva notificación. Al así hacerlo, no se le hubiese causado perjuicio a la agencia administrativa, ni al interés público y a ninguna de las partes, debido a que todas comparecieron oportunamente ante el foro intermedio. En este extremo, respetuosamente, disiento.

No menos importante, sostengo que, en esta controversia, ameritaba realizar un análisis integral de la Sec. 3.19 de la Ley de Procedimiento Administrativo

Uniforme, *infra*, sus enmiendas recientes y su correlación con la Ley Núm. 73-2019, *infra*. En específico, en lo que concierne a la jurisdicción y competencia de la Junta Revisora de la Administración de Servicios Generales (ASG) para revisar la impugnación de una solicitud de propuesta (RFP) de un servicio profesional, altamente especializado y técnico adjudicado por otra agencia administrativa adjudicativa, a saber, el Programa de Medicaid Puerto Rico del Departamento de Salud, cuyo carácter complejo y técnico exige procedimientos y criterios específicos que no pueden ser equiparados a los de las subastas de bienes y servicios no profesionales en virtud de la Ley Núm. 73-2019, *infra*, sobre los cuales la Junta Revisora de la ASG ejerce, en virtud de su ley habilitadora, la competencia revisora exclusiva. En ese extremo, concurro. Me explico.

**I**

El 22 de julio de 2024, el Departamento de Salud (DS) publicó el *Puerto Rico Medicaid Program Eligibility and Enrollment System Takeover Request for Proposal* RFP-2024-PMP-MES-EE-004 (RFP) con el objetivo de seleccionar un proveedor para la administración del sistema informático de elegibilidad e inscripción en el Programa Medicaid Puerto Rico.[1] Se recibieron las propuestas de: RedMane

---

[1] Recordemos que el uso del requerimiento de propuesta —como método alterno a la subasta formal— es común "cuando se trata de bienes o servicios especializados que involucran aspectos altamente

Technology, LLC (RedMane o peticionaria)[2], D2Sol, Inc. (D2Sol) y Trillian Technologies, Inc. (Trillian).

El 14 de noviembre de 2024, el DS comunicó el *Award Notification* (notificación del 14 de noviembre de 2024) en el que se le adjudicó la buena pro a D2Sol. En este se les notificó a los licitadores que tenían diez (10) días laborables para solicitar la reconsideración ante la División de Vistas Administrativas del DS y luego contaban con veinte (20) días laborables para solicitar la revisión judicial en el Tribunal de Apelaciones. Tanto Trillian como RedMane solicitaron ante el DS la reconsideración del dictamen, pero no hubo determinación por parte de la agencia.

Insatisfecho, el 26 de diciembre de 2024 RedMane acudió en revisión judicial al Tribunal de Apelaciones para, en síntesis, impugnar la adjudicación de la licitación a D2Sol.[3]

---

complejos o cuando existen escasos competidores cualificados". *PR Eco Park et al. v. Mun. de Yauco,* 202 DPR 525, 532 (2019).

[2] Surge del expediente que desde el 2018 RedMane fue la compañía que obtuvo la buena pro del contrato con el DS para ese servicio, el cual venció en septiembre de 2025 (2019-DS0574-1).

[3] RedMane, además, le solicitó al Tribunal de Apelaciones la paralización de los procedimientos en el DS relacionados con la adjudicación y contratación de la subasta, la cual se declaró no ha lugar. Inconforme, RedMane acudió ante nos mediante una moción en auxilio de jurisdicción y un recurso de certiorari (CC-2025-0014), los cuales fueron declarados no ha lugar. En la *Resolución*

En el foro intermedio, el DS solicitó la desestimación por falta de jurisdicción, específicamente por ser prematuro el recurso.[4] Sostuvo que la notificación del 14 de noviembre del 2024 fue defectuosa porque la Ley de Procedimiento Administrativo Uniforme (LPAU), *infra*, dispone que los términos se computan en días calendario y no laborables.

El 3 de febrero de 2025, el Tribunal de Apelaciones dictó una *Sentencia* en la que declaró ha lugar la solicitud de desestimación, al concluir que el recurso de revisión judicial era prematuro. En particular, se dispuso que era evidente que la notificación fue defectuosa en cuanto a las advertencias de los términos para solicitar reconsideración y revisión judicial. Por ello, el foro apelativo devolvió el caso al DS para que emitiera una notificación de adjudicación del RFP conforme a derecho y la notificara nuevamente a los licitadores.

Sin que la *Sentencia* del Tribunal de Apelaciones adviniera final y firme, el 11 de febrero de 2025 el DS comunicó un segundo *Award Notification* (notificación del

---

hice constar una expresión disidente en la que consigné que hubiese paralizado los procedimientos en protección del interés público, por tratarse de un RFP de $97 millones en fondos públicos y que el contrato adjudicado en años anteriores, en aquel momento, seguía vigente, por lo que el servicio no se vería interrumpido.

[4] *RedMane Technology, LLC v. Departamento de Salud y D2Sol, Inc., et als*. (KLRA202400705). Se clarifica que este es el recurso de revisión ante nos (AC-2025-0025).

11 de febrero de 2025) enmendando las advertencias para solicitar la reconsideración y revisión judicial en virtud de las secciones 3.15 y 4.2 de la LPAU, *infra*. En esa segunda notificación, el DS consignó que las partes adversamente afectadas tenían veinte (20) días para solicitar la reconsideración ante la División de Vistas Administrativas del DS y treinta (30) días para solicitar la revisión judicial en el Tribunal de Apelaciones.[5]

Al presentarse un segundo recurso de revisión judicial por parte de RedMane, el Procurador General presentó una *Moción en cumplimiento de orden* y solicitó la desestimación del recurso debido a que el término de la revisión judicial era de veinte (20) días y no de treinta (30) días como se consignó en la notificación del 11 de febrero de 2025. Posteriormente, esta segunda notificación también fue declarada inoficiosa por el Tribunal de Apelaciones en el caso KLRA202500195.

Retomando en cuanto al caso ante nos (KLRA202400705), RedMane solicitó la reconsideración en el Tribunal de Apelaciones, la cual se rechazó. Inconforme, el 25 de

---

[5] Surge del expediente que, antes de presentar el recurso de revisión judicial en el Tribunal de Apelaciones, RedMane presentó una solicitud de reconsideración ante la Directora Ejecutiva, el Secretario de Salud y la oficina de asesores legales del DS (División de Vistas Administrativas) y, simultáneamente, otro recurso ante la Junta Revisora de la Administración de Servicios Generales (ASG). Esta última no atendió el recurso.

abril de 2025, acudió a este Tribunal mediante un recurso de apelación. En este, alegó la comisión de un solo error: que el Tribunal de Apelaciones erró al determinar que el derecho a solicitar la revisión de la adjudicación de licitación de una propuesta se rige por la sección 3.15 de la LPAU, *infra*, con exclusión de la sección 3.19, referente a los procesos de licitación pública, y de la sección 4.2 de la LPAU, *infra*.[6]

Atendido el recurso como un certiorari, por ser el adecuado, el 2 de julio de 2025 emitimos una *Resolución* en la que se le ordenó al DS a que, en el término de veinte (20) días, mostrara causa por la cual no debía expedirse el recurso y, a su vez, se le ordenase notificar la adjudicación de la subasta conforme a la sección 3.19 de la LPAU, *infra*.[7]

En cumplimiento, el 22 de julio de 2025, el DS presentó un *Escrito en cumplimiento de orden* y expresó que "procede notificar nuevamente el *Aviso de adjudicación* ya que aun cuando las subastas y los procedimientos de requerimiento de propuestas de servicios profesionales no son revisables ante la Junta Revisora de Subastas de la

---

[6] El 2 de mayo de 2025 D2Sol presentó un *Memorando en oposición a que se expida el auto de certiorari en el recurso erróneamente denominado "Apelación".*

[7] El 14 de julio de 2025, Trillian presentó una *Moción en cumplimiento de orden.*

Administración de Servicios Generales, le aplican los términos dispuestos en la Sección 3.19 de la [LPAU]".[8]

Finalmente, el 26 de septiembre de 2025, el DS presentó la *Solicitud de remedio y trámite expedito*. En esta solicitó que, con el mayor respeto, este tribunal se exprese de manera expedita sobre la controversia planteada para despejar las dudas con relación a los términos aplicables para la revisión de las adjudicaciones de servicios profesionales.

Establecido lo anterior, procedo a exponer brevemente el derecho aplicable.

II

A.

El término jurisdicción denota el poder o la autoridad que posee, ya sea un tribunal o un organismo administrativo, para atender asuntos sometidos para su consideración. *CIC Const. v. JSMP-UPR,* 196 DPR 964, 972 (2016); *Ayala Hernández v. Consejo Titulares*, 190 DPR 547 (2014). Similar al caso de los tribunales, las agencias administrativas están impedidas de asumir jurisdicción donde no existe. *CIC Const. v. JSMP-UPR, supra,* pág. 973. El ámbito de autoridad de una entidad administrativa dependerá de la delegación de aquellos poderes que le hayan sido específicamente conferidos por la Asamblea

---

[8] *Escrito en cumplimiento de orden* del DS, págs. 1-2.

Legislativa. *Íd., pág. 973; Ayala Hernández v. Consejo Titulares, supra.*

Como paso inicial para precisar la capacidad de un ente administrativo de poder intervenir en determinado asunto es necesario examinar su ley habilitadora, también conocida como su ley orgánica. *CIC Const. v. JSMP-UPR, supra,* pág. 973. Un organismo administrativo está vedado de asumir jurisdicción sobre un asunto a menos que esté claramente facultado en ley para ello. *Íd.* Aquellas actuaciones que no encuentren apoyo en el estatuto habilitador de una entidad administrativa se reputarán nulas por constituir trámites *ultra vires*. *Íd.*

Por otra parte, es norma conocida de hermenéutica legal que el texto de la ley se impone si no existe margen de duda sobre su acepción. *Íd.,* pág. 974; *Spyder Media Inc. v. Mun. San Juan*, 194 DPR 547 (2016). Ahora bien, los estatutos han de interpretarse de manera integral, acorde con la intención legislativa que los inspira. *CIC Const. V. JSMP-UPR, supra,* pág. 974. Hemos advertido que "la letra de la ley no se debe seguir ciegamente cuando ello iría en detrimento de su espíritu y su fin". *Íd.,* citando a *Rivera Fernández v. Mun. Carolina*, 190 DPR 196, 202 (2014).

**B.**

La Administración de Servicios Generales (ASG) es la entidad gubernamental del Poder Ejecutivo responsable de

implementar la política pública relacionada con las compras de bienes, obras y servicios no profesionales para todas las entidades gubernamentales y entidades exentas, según definidas en la Ley Núm. 73-2019, *infra*.[9] Véanse Exposición de Motivos y Art. 5 de la Ley Núm. 73-2019, 3 LPRA sec. 9832. Entre algunas de sus facultades y deberes se encuentra la de establecer el proceso mediante el cual los bienes, obras y servicios no profesionales habrán de realizarse, comprarse, entregarse y distribuirse; otorgar contratos relacionados y escoger el tipo de contrato a ser otorgado. Art. 10 de la Ley Núm. 73-2019, 3 LPRA sec. 9832e.

Precisamente, la Ley Núm. 73-2019, conocida como la *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019,* 3 LPRA sec. 9831 *et seq*., otorgó a la ASG las herramientas necesarias para agilizar los procesos, estableciendo nuevos métodos que gobernarán las adquisiciones de bienes y servicios no profesionales por parte del Gobierno de Puerto Rico. Art. 2 de la Ley Núm. 73-2019, 3 LPRA sec. 9831a.

En lo aquí pertinente, en cuanto al alcance de la Ley Núm. 73-2019, se dispone que sus disposiciones regirán los

---

[9] La ASG fue creada mediante el Plan de Reorganización Núm. 2 de 1971, derogado por el Plan de Reorganización Núm. 3 de 2011, el cual a su vez fue derogado por la Ley Núm. 73-2019.

procesos de compras y subastas de bienes, obras y servicios no profesionales en todas las entidades gubernamentales y las entidades exentas. Art. 3 de la Ley Núm. 73-2019, 3 LPRA sec. 9831b. En consecuencia, todas las entidades gubernamentales, según definidas en el estatuto, deberán realizar las **compras y subastas de bienes, obras y servicios no profesionales** a través de la ASG, sin excepción alguna. Íd.[10] En concreto, el Art. 24 establece:

> En aras de lograr ahorros considerables en el proceso de compras se establece la centralización de las compras gubernamentales. La Administración será el único ente autorizado a realizar y negociar la adquisición de bienes, obras **y servicios no profesionales** para las Entidades Gubernamentales, según definidas en la presente Ley, conforme los métodos de licitación y compras excepcionales aquí establecidos. Todas las entidades gubernamentales, independientemente la fuente de fondos para la adquisición (locales o federales), adquirirán todos los bienes, obras y **servicios no profesionales** a través de la Administración. (Énfasis suplido). Art. 24 de la Ley Núm. 73-2019, 3 LPRA sec. 9834.

Uno de los métodos de licitación reconocidos por la Ley Núm. 73-2019 lo es la Solicitud de propuestas y/o

---

[10] La ASG adoptó el *Reglamento uniforme de compras y subastas de bienes, obras y servicios no profesionales de la Administración de Servicios Generales del Gobierno de Puerto Rico,* Reglamento Núm. 9230 del 18 de noviembre de 2020. Su propósito fue establecer las normas y procedimientos a seguirse por la ASG para tramitar todas las compras y subastas de bienes, obras y servicios no profesionales. Art. 1.3 del Reglamento Núm. 9230. En este se reitera que los procesos de compras y subastas de bienes, obras y servicios no profesionales de las entidades gubernamentales, según definidas, serán a través de la ASG. Íd., Art. 1.4.

Solicitud de propuestas selladas y/o *Request for Proposal* (RFP), el cual se utiliza para adquirir bienes, obras y **servicios no profesionales** que admite la negociación entre el oferente y la ASG, mientras se evalúan las propuestas recibidas. Art. 31 de la Ley Núm. 73-2019, 3 LPRA sec. 9834g(d). Bajo este método, la ASG puede solicitarles a los licitadores la presentación de su mejor y final oferta. Íd.

Con relación al presente caso, la Ley Núm. 73-2019 define servicios no profesionales como "[a]quellos servicios que no son ofrecidos por una persona natural o jurídica con conocimientos o habilidades especializadas a quien se le requiere poseer un título universitario o licencia que lo acredite como profesional especializado". Art. 4 de la Ley Núm. 73-2019, 3 LPRA sec. 9831c(hh). Por otra parte, los servicios profesionales son:

> Aquellos servicios que son ofrecidos por una persona natural o jurídica con conocimientos o habilidades especializadas a quien se le requiere poseer un título universitario o licencia que lo acredite como profesional especializado; o cuya prestación principal consiste en el producto de la labor intelectual, creativa o artística, o en el manejo de destrezas altamente técnicas o especializadas. Íd., inciso (ii).

Con relación a este último, hemos señalado que "un servicio profesional conlleva una vocación, llamado, ocupación o empleo que supone, además, algún tipo de conocimiento, labor o destreza especializada". *St. James*

*Sec. v. AEE*, 213 DPR 366, 384 (2023)[11]; *Viruet et al. v. SLG Casiano-Reyes*, 194 DPR 271, 280 (2015). Véase, además, *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1022 (2020).

## C.

En lo concerniente, la Ley Núm. 73-2019 creó, además, una Junta de Subastas y una Junta Revisora de Subastas. Arts. 47 y 55, 3 LPRA secs. 9836 y 9837. Véase, *R&B Power, Inc. v. Junta de Subastas ASG*, 213 DPR 685 (2024). La Junta de Subastas, adscrita a la ASG, está facultada para evaluar y adjudicar las subastas del Gobierno de Puerto Rico que se realicen de conformidad con las disposiciones de la Ley Núm. 73-2019. Art. 47, 3 LPRA sec. 9836. Esta Junta de Subastas está, a su vez, facultada a constituir un Comité Evaluador de Subastas, cuya función principal será evaluar que los licitadores cumplan con los requisitos de licitación particulares de cada subasta. Art. 47, 3 LPRA sec. 9836.

Por su parte, la Junta Revisora de Subastas, adscrita también a la ASG, ostenta naturaleza cuasijudicial y está facultada para revisar y adjudicar cualquier impugnación

---

[11] En *St. James Sec. v. AEE,* 213 DPR 366, 389 (2023), se determinó, entre varios asuntos, que los servicios de vigilancia y protección que deseaba adquirir la Autoridad de Energía Eléctrica eran servicios profesionales y que, por ello, no le aplicaban las disposiciones de la Ley Núm. 73-2019, sino los lineamientos de la LPAU, particularmente aquellos relacionados a los procesos de subastas o requerimientos de propuesta y sus respectivas revisiones administrativas y judiciales.

de las determinaciones o adjudicaciones de las subastas **hechas por**: (1) la Administración Auxiliar del Área de Adquisiciones; (2) por la Junta de Subastas de la ASG; **o** (3) por las Juntas de Subastas de las Entidades Exentas.[12] Art. 55 de la Ley Núm. 73-2019, 3 LPRA sec. 9837.[13]

A causa de ello, la parte adversamente afectada por una decisión de la ASG, de la Junta de Subastas o de cualquier Junta de Subastas de una Entidad Exenta podrá, dentro del término de diez (10) días calendario de la notificación de la adjudicación de la subasta, presentar una solicitud de revisión administrativa ante la Junta Revisora de Subastas de la ASG. Art. 64 de la Ley Núm. 73-2019, 3 LPRA sec. 9838a. Finalmente, la parte adversamente afectada por la determinación de la Junta Revisora de la ASG podrá presentar un recurso de revisión judicial ante el Tribunal de Apelaciones conforme lo establece la Ley Núm. 38-2017, conocida como la Ley de Procedimiento

---

[12] Como se señala en la Opinión mayoritaria, el DS no es catalogada como una entidad exenta de conformidad con la Ley Núm. 73-2019. Por virtud del inciso (p) del Art. 4 de la Ley Núm. 73-2019, 3 LPRA sec. 9831c, cuando se habla de una Entidad Exenta, listadas taxativamente, se trata de aquella entidad gubernamental que no estará obligada a realizar sus compras a través de la ASG por razón de un plan fiscal vigente o por ser una entidad encargada de fiscalizar la integridad del servicio público o la eficiencia gubernamental. En virtud de este articulado, las Entidades Exentas tienen que realizar sus procesos de licitación acogiendo los métodos establecidos en la Ley Núm. 73-2019 para ello.

[13] Véase, también, el Art. 59, 3 LPRA sec. 9837d.

Administrativo Uniforme, 3 LPRA sec. 9601 *et seq.*[14] Art. 68 de la Ley Núm. 73-2019, 3 LPRA sec. 9838e.

**D.**

La Ley Núm. 237-2004, conocida como la *Ley para establecer parámetros uniformes en los procesos de contratación de servicios profesionales y consultivos para las agencias y entidades gubernamentales del ELA,* se creó con el propósito de consolidar en un solo estatuto los requisitos de contratación de servicios profesionales o consultivos que otorgan las entidades gubernamentales a individuos y entidades privadas. Exposición de Motivos, Ley Núm. 237-2004, 3 LPRA sec. 8611 *et seq.* En esta, se definen los servicios profesionales o consultivos como "aquellos cuya prestación principal consista del producto de la labor intelectual, creativa o artística, o en el manejo de destrezas altamente técnicas o especializadas". Art. 1 de la Ley Núm. 237-2004, 3 LPRA sec. 8611(D).

**III**

**A.**

Es menester tener presente que la controversia ante nuestra consideración está enmarcada en la contratación de un proveedor cualificado para la transición, operación y mejoras del sistema actual de inscripción y elegibilidad

---

[14] El derecho a cuestionar la adjudicación de una subasta mediante el proceso de revisión judicial es parte del debido proceso de ley. *PVH Motor v. ASG*, 209 DPR 122 (2022); *PR Eco Park et al. v. Mun. de Yauco*, *supra.*

del Programa de Medicaid del Departamento de Salud de Puerto Rico, conocido como *Cúram Eligibility and Enrollment (E&E) System*.[15] Adviértase, de entrada, que no nos encontramos ante un proceso ordinario de una compra de algún bien o producto que sea rutinario y fácilmente estandarizable. Por el contrario, se trata de un requerimiento de propuesta para la contratación de un servicio de software altamente técnico y especializado, que tiene implicaciones directas en los servicios de salud a un sector de nuestra población y que, a su vez, constituye un asunto complejo con pocos competidores cualificados.

En este contexto, debo consignar que nos hallamos ante la adjudicación de una buena pro de alto interés público y, a mi juicio, la presente controversia ameritaba un trámite distinto por parte de este Tribunal. En ocasiones anteriores, hemos reconocido que, aunque una notificación defectuosa suele privar de jurisdicción al Tribunal de Apelaciones, pues el plazo para la revisión judicial no comienza a transcurrir, también hemos concluido que ello no impide que el foro intermedio resuelva en los méritos cuando la parte ha presentado su

---

[15] El Medicaid es un programa de seguro de salud conjunto federal y estatal que ayuda a cubrir los costos médicos para personas de bajos ingresos, familias, niños y niñas, mujeres embarazadas y personas con discapacidades. Véase, https://medicare.gov. (última visita, 12 de enero de 2026).

recurso y no aplica la doctrina de incuria. *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR 525, 540 (2019); *Horizon v. Jta. Revisora, RA Holdings*, 191 DPR 228, 235-236 (2014); *Molini Gronau v. Corp. P.R. Dif. Púb.*, 179 DPR 674, 686-687 (2010).

Por consiguiente, y contrario al dictamen mayoritario, sostengo que en este caso nada impedía que el Tribunal de Apelaciones hubiese atendido en los méritos la impugnación de la adjudicación de la buena pro que presentó RedMane, de conformidad con lo resuelto en *PR Eco Park et al. v. Mun. de Yauco, supra.* De esta manera, se hubiese dado por superado el asunto de la notificación defectuosa —en torno a que los términos se computan en días calendario y no laborables—, sin mayor dilación, pues surge del expediente y de la *Sentencia* del Tribunal de Apelaciones (KLRA202400705) que todas las partes comparecieron oportunamente ante sí.[16]

Al así hacerlo, no se le hubiese causado perjuicio a ninguna de las partes, ni a la agencia, ni al interés público, por lo que no habría sido necesaria la desestimación del recurso por prematuro ni la devolución del caso al DS para que emitiera una nueva notificación

---

[16] Así, por ejemplo, D2Sol, licitador ganador, le solicitó al Tribunal de Apelaciones que atendiera los méritos del recurso, independiente del defecto en la notificación, debido a que no hubo ninguna parte afectada por el defecto, y porque RedMane presentó el recurso de revisión judicial en el término para ello. Véase, *Sentencia* del Tribunal de Apelaciones, pág. 5.

de adjudicación.[17] Este proceder hubiese atendido la premura que implica, para la política pública y el pueblo de Puerto Rico, la adjudicación de un contrato de alto impacto al erario, como el contemplado en este caso, sin imponer trabas jurisdiccionales, pues ciertamente no se privó a ninguna de las partes de su derecho a impugnar la adjudicación.

**B.**

De otra parte, opino que esta controversia ameritaba un análisis integral de la Sec. 3.19 de la Ley Núm. 38-2017, conocida como Ley de Procedimiento Administrativo Uniforme (LPAU), 3 LPRA sec. 9659, sus enmiendas recientes y su correlación con la Ley Núm. 73-2019. Específicamente en cuanto a la falta de jurisdicción y competencia de la Junta Revisora de la ASG para revisar la impugnación de un RFP de un servicio profesional, altamente especializado y técnico adjudicado por otra agencia administrativa, a saber, el Programa de Medicaid Puerto Rico del Departamento de Salud. Al realizar ese análisis, nada me sugiere que existe un resultado imprevisto o un vacío en nuestro ordenamiento jurídico respecto al procedimiento ordinario de revisión de este tipo de adjudicaciones administrativas. De esta forma, sostengo en que no procedía la aplicación de la Sec. 3.19 de la LPAU respecto

---

[17] Véase, *García Sierra v. Adm. Corrección*, 192 DPR 936 (2015) (Resolución) (Voto particular disidente del Juez Asociado señor Estrella Martínez).

a la jurisdicción de la Junta Revisora de la ASG, por el hecho de tratarse de una licitación pública no cobijada por la Ley Núm. 73-2019, sino bajo las demás disposiciones de la LPAU en materia de procedimientos adjudicativos y revisión judicial.[18] Me explico.

Como reseñé previamente, habida cuenta de que la Ley Núm. 73-2019 en múltiples instancias establece que sus disposiciones regirán los procesos de compra y subastas de bienes, obras y servicios no profesionales en todas las agencias gubernamentales y entidades exentas, el resultado al que hoy arribamos, de no reconocerle jurisdicción revisora en el RFP del caso ante nos, es consecuente con el ordenamiento actual.[19] Un resultado contrario hubiese representado un peligro dual: el aumento significativo de revisiones administrativas ante la Junta de Subastas de la ASG, sin necesariamente contar con los recursos operacionales para ello actualmente, y el riesgo latente de que los recursos de revisión administrativa no sean

---

[18] Véanse las Secciones 3.14, 3.15 y 4.2 de la LPAU (3 LPRA secs. 9654-9655, 9672). ("La orden o resolución [final] advertirá el derecho de solicitar la reconsideración ante la agencia o de instar el recurso de revisión como cuestión de derecho en el Tribunal de Apelaciones, así como las partes que deberán ser notificadas del recurso de revisión, con expresión de los términos correspondientes". Sec. 3.14, *supra*.

[19] A su vez, adviértase que tan siquiera obra en el expediente alguna expresión administrativa de la Junta Revisora de la ASG, debido a que no ejerció jurisdicción sobre la revisión simultánea que le presentó RedMane y tampoco compareció ante nos, a pesar de ser una de las partes recurridas.

atendidos oportunamente por parte de esta, por tratarse de asuntos especializados y complejos que superen su pericia.[20]

Similarmente, como cuestión de hecho, tampoco la adjudicación de la subasta que aquí se impugna fue realizada por la Junta de Subastas de la ASG, **ni** por la Administración Auxiliar del Área de Adquisiciones de la ASG, **ni** por una entidad exenta, de conformidad con el Art. 55 de la Ley Núm. 73-2019, *supra*. Reitero que, en este caso, la adjudicación de la subasta fue realizada por el Programa de Medicaid del DS, el cual no es una entidad exenta. De esta manera, no están presentes ninguna de las circunstancias que le brindan jurisdicción a la Junta Revisora de la ASG en virtud de su ley habilitadora.

Sobre este particular, nada en el historial del trámite legislativo de la Ley Núm. 73-2019, mediante el P. de la C. 2112 del 13 de mayo de 2019, sugiere que la intención legislativa fuese brindarle a la ASG o a sus organismos revisores injerencia en cuanto a las compras y contratación de los servicios profesionales en el

---

[20] Véase, *Documento guía, Regla Interpretativa Núm. 001* de la ASG del 1 de septiembre de 2023 ("El texto de la Ley 73-2019 es claro y establece que el alcance de dicha legislación se limita a los procesos de compras y subastas de bienes, obras y servicios no profesionales en el Gobierno. Por tanto, todas las entidades gubernamentales, independientemente de la fuente de fondos para la adquisición, locales o federales, adquirirán todos los bienes, obras y servicios no profesionales a través de la administración"). *Íd.*, pág. 9.

gobierno. Por el contrario, todo el tracto legislativo de la medida sostuvo consecuentemente la distinción entre los servicios profesionales y los no profesionales hasta la aprobación final. La única responsabilidad inicial y actual de la ASG con relación a este tipo de servicios profesionales es mantener un *Registro Único de Proveedores de Servicios Profesionales*, y nada más. Véase, Art. 42 de la Ley Núm. 73-2019, 3 LPRA sec. 9835.

De forma similar, con la aprobación de la Ley Núm. 48-2024 se derogó la anterior Sec. 3.19 de la LPAU y se sustituyó por una nueva, la cual, a su vez, se enmendó posteriormente mediante la Ley Núm. 153-2024. Uno de los propósitos de la Ley Núm. 48-2024 fue reconocer el recurso de revisión administrativa (ante la Junta Revisora de la ASG) como el único recurso para impugnar las adjudicaciones **en los procesos de licitación pública regulados por la Ley Núm. 73-2019.** Exposición de Motivos, Ley Núm. 48-2024. Entiéndase, los procesos de compras y subastas de bienes, obras y servicios no profesionales. De hecho, el Art. 3.19 de la LPAU inicia haciendo una correlación directa con este estatuto: "[l]os procesos de licitación pública se celebrarán de conformidad a la Ley 73-2019, según enmendada…". Sec. 3.19 de la LPAU, *supra*.[21]

---

[21] Asimismo, se dispone que las entidades gubernamentales exentas deberán seguir los procedimientos establecidos en la Ley Núm. 73-2019 al momento de realizar

Es más, la referida Ley Núm. 48-2024 enmendó varias disposiciones de la Ley Núm. 73-2019 para uniformar los términos, las cuantías y el alcance y ninguna de ellas fue a los fines de enmendar los Arts. 3, 55 o 59 del referido estatuto para concederle expresamente a la Junta Revisora de la ASG la autoridad de revisar y adjudicar cualquier impugnación de solicitudes de propuestas o RFP de servicios profesionales especializados. Por el contrario, la naturaleza jurisdiccional tanto de la ASG como de la Junta Revisora adscrita a esta, en lo concerniente a las adquisiciones de bienes y servicios no profesionales, permaneció inalterada.[22]

Por todas estas razones, y haciendo énfasis en que la Asamblea Legislativa definió con claridad las dos (2) categorías de servicios en la Ley Núm. 73-2019, evidencia la falta de necesidad de pautar que nos encontramos ante una inadvertencia del legislador. En ese extremo, concurro con el razonamiento mayoritario.

---

sus compras y subastas de bienes, obras y **servicios no profesionales**. Sec. 3.19 de la LPAU, *supra*.

[22] Similarmente, la enmienda que introdujo la Ley Núm. 153-2024 a la Sec. 3.19 de la LPAU fue a los fines exclusivos de uniformar los términos de revisión judicial entre la LPAU y la Ley Núm. 73-2019, corregir discrepancias en conceptos utilizados entre los estatutos y errores tipográficos. En ese sentido, tampoco la referida enmienda alteró o amplió la jurisdicción y competencia de la ASG y su Junta Revisora para considerar las adjudicaciones y revisiones de las licitaciones públicas de servicios profesionales.

Así las cosas, afirmo que la interpretación de la Sec. 3.19 vigente de la LPAU, en conjunto con la ley habilitadora de la ASG, nos llevó correctamente a concluir que el recurso de revisión administrativa ante la Junta de Revisión de Subastas de la ASG es aplicable a las adjudicaciones de bienes y servicios **no** profesionales realizadas por la Junta de Subastas de la ASG o por las entidades gubernamentales exentas de conformidad con la Ley Núm. 73-2019. En otras palabras, cualquier parte adversamente afectada por una determinación en esos escenarios deberá, en lugar de solicitar la reconsideración ante la Junta de Subastas de la ASG o la misma entidad exenta, acudir en revisión administrativa ante la Junta Revisora de la ASG en el término dispuesto para ello.

Esto es consecuente con el ordenamiento actual, en el cual tanto la Junta de Subastas de la ASG como la Junta Revisora de la ASG solo atienden procesos de licitación pública de bienes y servicios no profesionales.

## C.

Por otra parte, abona a este análisis el hecho de que el *Award of Notification* dispone que el RFP se realizó en virtud tanto de la LPAU como de la Orden Administrativa Núm. OA-581 y del 45 CFR 74.327-329. La OA-Núm. 581 del DS se promulgó el 21 de diciembre de 2023 por el entonces Secretario de Salud con el fin de establecer los

procedimientos aplicables para la contratación de servicios profesionales y consultivos que excedan de $150,000.00 en un mismo año fiscal, entre otros.[23]

En lo aquí pertinente, todo el acápite sexto de la OA-Núm. 581 es sobre los procedimientos a llevarse a cabo cuando sea necesario realizar un RFP en atención a la complejidad de los servicios requeridos, incluyendo: la publicación del RFP; el contenido, el proceso de enmiendas a los RFP; las responsabilidades de la Oficina de Subastas del DS; la evaluación de las propuestas; la adjudicación y notificación del proveedor seleccionado, **incluyendo las advertencias de revisión administrativa de la adjudicación <u>ante el DS</u> y la revisión judicial al Tribunal de Apelaciones**. Acápite sexto, OA-Núm. 581.[24] Disposiciones similares también surgen del *PRMP Contracting Transparency, Non-Competitive Procurement & Competitive*

---

[23] Véanse, además, el Boletín Administrativo Núm. OE-2021-029, intitulado *Orden Ejecutiva del Gobernador de Puerto Rico, Hon. Pedro R. Pierluisi*, y la Carta Circular Núm. 013-2021 de la Oficina de Gerencia y Presupuesto, intitulada *Medidas para asegurar la transparencia y responsabilidad fiscal en la contratación gubernamental de servicios profesionales*, la cual requiere que las entidades que componen el Poder Ejecutivo del Gobierno de Puerto Rico, que interesen otorgar contratos de servicios profesionales por la cantidad de 250,000.00 o más, durante un año fiscal, están obligadas a establecer unas guías uniformes que regulen el proceso para evaluar y autorizar solicitudes, a modo de asegurar la transparencia, eficiencia, sensibilidad y responsabilidad fiscal en la contratación gubernamental de servicios profesionales.

[24] La OA-Núm. 581 se enmendó mediante la OA-Núm. 2025-603.

*Bid Evaluation Process - Standard Operation Procedure* (SOP) en cuanto a los mecanismos de revisión ante el Departamento Legal del DS (PRDOH Legal Department).[25]

Además, el DS tiene otras órdenes administrativas para atender los procedimientos altamente especializados y complejos del Programa de Medicaid, las cuales incluyen la creación de un Comité de Evaluación y Recomendación[26] dedicado exclusivamente a ese programa. Véanse, OA Núm. 2025-614, OA Núm. 2024-586 del DS.

Ante el análisis expuesto, concluyo que es la División de Vistas Administrativas del DS el foro administrativo interno con jurisdicción para atender la revisión administrativa de la adjudicación del RFP, por tratarse de la contratación de un servicio profesional especializado que, conforme al mandato legislativo, la Junta Revisora de la ASG no tiene jurisdicción ya que, como vimos, es exclusiva para la revisión de subastas para la adquisición de bienes y servicios no profesionales. En

---

[25] Véase, *Apéndices*, págs. 591, 615-616.

[26] Este Comité tiene la responsabilidad de evaluar las propuestas recibidas en los procesos competitivos del Programa Medicaid para la contratación de servicios profesionales y consultivos, así como las propuestas selladas, en el idioma inglés, y emitir una recomendación de selección a la directora ejecutiva del programa. Sus procedimientos deben ser según lo dispuesto en el *Puerto Rico Medicaid Program (PRMP) Contracting Transparency, Non-Competite Procurement & Competitive Bid Evaluation Process* del Programa Medicaid, entre otras disposiciones, incluyendo ordenes administrativas y cartas circulares. Véanse, OA Núm. 2025-614, OA Núm. 2024-586 del DS.

consecuencia, los lineamientos actuales de la Ley Núm. 73-2019 son inaplicables al RFP de este caso.[27]

**IV**

Ante ese cuadro, reitero que la interpretación conciliadora de la Sec. 3.19 vigente de la LPAU, en conjunto con la Ley Núm. 73-2019 nos lleva a concluir que el recurso de revisión administrativa ante la Junta de Revisión de Subastas de la ASG es inaplicable a las adjudicaciones de bienes y servicios profesionales altamente especializados y técnicos adjudicados por otra agencia administrativa con poderes adjudicativos y exógena a la ASG. Máxime cuando el proceso de licitación y adjudicación no se realizó en virtud de la Ley Núm. 73-2019.

Ahora bien, respetuosamente disiento del curso de acción adoptado por la mayoría de este Tribunal sobre el recurso de epígrafe, referente a ordenar una renotificación que resulta innecesaria en este caso. En su lugar, debimos aplicar el precedente de *PR Eco Park et al. v. Mun. de Yauco, supra,* devolver el caso al Tribunal de Apelaciones y ordenarle que atendiera los méritos de los errores señalados relacionados con la adjudicación del

---

[27] Véase, *Documento guía, Regla Interpretativa Núm. 003* de la ASG del 1 de septiembre de 2023 (…"La Ley 73-2019 no faculta a la Administración [ASG] a regular la contratación uniforme de servicios profesionales del Estado, pero le impone el deber de implementar el Registro Único de Proveedores (RUP) del Estado"). Íd., pág. 9.

RFP que aquí se impugna. Ello pues el error en la notificación no afectó el derecho de revisión judicial de las partes y todas comparecieron oportunamente ante el foro apelativo intermedio.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

RedMane Technology, LLC

    Peticionario

      v.                        AC-2025-0025

Departamento de Salud y otros

    Recurridos

Opinión Disidente emitida por el Juez Asociado SEÑOR COLÓN PÉREZ.

En San Juan, Puerto Rico, a 10 de abril de 2026.

Los hechos medulares que dan margen al presente litigio no están en controversia, razón por la cual hemos decidido adoptar los mismos por referencia. En esta ocasión estábamos llamados y llamadas a pasar juicio sobre la corrección, o no, de cierta notificación emitida por el Departamento de Salud en el contexto de la adjudicación de la *buena pro* de determinada subasta, -- mediante el mecanismo de *Request for Proposal* --, llevada a cabo a los fines de seleccionar un proveedor para la administración del sistema de elegibilidad e inscripción del Programa Medicaid Puerto Rico. Tal notificación, a todas luces, como bien señala una mayoría de mis compañeros y compañeras de estrado, no fue correctamente efectuada.

Dicho ello, -- y ya más en lo relacionado con el porqué de nuestro escrito --, en la *Opinión* que hoy emite este Tribunal, acertadamente se indica que, por ser el objeto del presente litigio la adjudicación de bienes y servicios profesionales altamente especializados, no son de aplicación aquí las disposiciones de la Ley Núm. 73-2019, mejor conocida como la *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019*, 3 LPRA sec. 9831 *et seq.* (en adelante, "Ley Núm. 73-2019"). Esto, cónsono con lo sentenciado por este Tribunal en *St. James Security Services, LLC v. Autoridad de Energía Eléctrica*, 213 DPR 366 (2023).

A modo de resumen, en aquella ocasión, debíamos resolver si el Tribunal de Apelaciones había errado al desestimar, por falta de jurisdicción, cierto recurso de revisión judicial, por presuntamente éste haber sido presentado ante sí prematuramente. Específicamente, la determinación del foro apelativo intermedio se basó en que los términos para solicitar la revisión de la adjudicación de subasta allí en controversia no habían comenzado a transcurrir, debido a que la notificación mediante la cual se adjudicó la misma había sido defectuosa. Lo anterior así, al no haberse incluido en la referida notificación las disposiciones sobre revisión administrativa y judicial contenidas en la Ley Núm. 73-2019, *supra*.

Evaluado el asunto, en *St. James Security Services, LLC v. Autoridad de Energía Eléctrica, supra*, determinamos que,

por tratarse de la adquisición de servicios de vigilancia y protección sumamente especializados, -- entiéndase, de servicios profesionales --, no eran de aplicación las disposiciones de la Ley Núm. 73-2019, *supra*. Esto, pues, como se sabe, el referido estatuto rige, específicamente, los procesos de compras y subastas de bienes, obras y servicios no profesionales del Gobierno de Puerto Rico. Art. 3 de la Ley Núm. 73-2019, *supra*, 3 LPRA sec. 9831b. Así pues, indicamos que, en esos casos, -- al igual que ocurre en la causa de epígrafe --, son de aplicación las disposiciones de la Ley Núm. 38-2017, mejor conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9601 *et seq.* (en adelante, "LPAU"), específicamente, aquellas relacionadas "con los procesos de subastas o requerimientos de propuestas, y sus respectivas revisiones administrativas y judiciales". *St. James Security Services, LLC v. Autoridad de Energía Eléctrica*, *supra*, pág. 389.

Ahora bien, en aquel momento, la Sec. 3.19 de la LPAU, *supra*, 3 LPRA sec. 9659, -- sobre procesos de licitación pública --, proveía para que aquella parte que estuviese adversamente afectada por la determinación de adjudicación de una agencia pudiese presentar una moción de reconsideración ante la misma o una solicitud de revisión administrativa ante la Junta Revisora de la Administración de Servicios Generales o la entidad apelativa correspondiente. No obstante, y como bien señala la *Opinión* mayoritaria, a raíz de las enmiendas

sufridas a la referida disposición legal, quedó eliminado el proceso de reconsideración al que hemos hecho referencia. **Así pues, el texto actual de la Sec. 3.19 de la LPAU,** *supra*, **se limita a disponer lo relacionado con el proceso de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales, la cual, según surge de la Ley Núm. 73-2019,** *supra*, **no tiene la facultad para revisar adjudicaciones de subastas en procesos de licitación pública para la contratación de servicios profesionales.**

Pese a esa realidad, en la *Opinión* que hoy emite este Tribunal, en esencia, se sentencia que, en todo proceso de licitación pública, la notificación de adjudicación se hará conforme a las exigencias incluidas en las Secs. 3.19 y 4.2 de la LPAU, *supra*, 3 LPRA secs. 9659 y 9672. Lo anterior así, aunque se trate, -- **como lo es el caso que hoy nos ocupa** --, de la adjudicación de bienes y servicios profesionales altamente especializados en los cuales no son de aplicación las disposiciones de la Ley Núm. 73-2019, *supra*. Asimismo, una mayoría de mis compañeros y compañeras de estrado establece que, en casos como estos últimos, las agencias administrativas podrán reglamentar un procedimiento de reconsideración a llevarse a cabo ante sí y que, de no estar reglamentado el mismo, se prescindirá de la etapa de reconsideración y/o revisión administrativa, de modo tal que el término jurisdiccional de veinte (20) días que tiene una parte para presentar un recurso de revisión judicial ante el Tribunal de Apelaciones comenzará a transcurrir desde la

notificación de la adjudicación de subasta emitida por la agencia administrativa correspondiente.

**Contrario a dicho proceder, y por no tratarse aquí de la adjudicación de una subasta de servicios no profesionales, asunto que reconocemos es uno gobernado por las disposiciones de la Ley Núm. 73-2019, *supra*, somos del criterio que, en esta ocasión, no quedaba más que recurrir a la Sec. 3.15 de la LPAU, *supra*, 3 LPRA sec. 9655, sobre reconsideración. Ello así, pues, a nuestro juicio, -- independientemente de si se está ante un procedimiento adjudicativo ordinario o un proceso de licitación pública para servicios profesionales, y toda vez que al procedimiento de subasta ante nuestra consideración no le son aplicables las disposiciones de la Ley Núm. 73-2019, *supra* --, la Sec. 3.15 de la LPAU, *supra*, es la única análoga a la aquí inaplicable Sec. 3.19 del mismo estatuto legal, que provee para un procedimiento de reconsideración ante una agencia administrativa.**

Así las cosas, y si bien estamos conformes con lo que hoy concluye este Tribunal en cuanto a que la notificación de adjudicación de subasta en controversia no fue efectuada correctamente, somos del criterio que bastaba aquí con devolver el caso al Departamento de Salud para que emitiese una notificación de adjudicación de conformidad con lo dispuesto en las Secciones 3.15 y 4.2 de la LPAU, *supra*, de forma tal que se activasen los términos de reconsideración y revisión judicial para aquellas partes que estuviesen interesadas en ello.

Por no ser este el curso de acción seguido hoy por una mayoría de mis compañeros y compañeras de estrado, disentimos.


                                        Ángel Colón Pérez
                                          Juez Asociado